CHARLES WHITNEY et al., Appellants, *v.* THE STATE OF NEW YORK, Respondent.

In 1839, under and by virtue of proceedings taken under the act of 1833 (Chap. 32, Laws of 1833), certain lands now in the city of B. were appro-

priated for the use of the Chenango canal. On appraisal of damages by the canal appraisers, as prescribed by the Revised Statutes (1 R. S. 225, § 46), they determined that the damages were $2,500, but that the benefits conferred upon the owner's adjoining lands by the construction of the canal were greater than the damages, and so awarded nothing. The State took possession of the land, constructed the canal and operated it until 1878, when it was abandoned, and by act of the legislature (Chap. 391, Laws of 1878) that portion lying within the corporate limits, including the lands so taken, released to said city, and the city proceeded to lay out a street thereon. Upon claim for damages presented to the Board of Claims, *held*, that the determination of the canal appraisers was conclusive against any claim for damages for the original taking and subsequent public use ; that there was no guaranty or covenant, express or implied, on the part of the State that the canal would never be abandoned ; and that the State was not liable for damages sustained by reason of such abandonment.

As to whether the State acquired an absolute title in fee to the land in question, *quœre.*

*It seems* that if only the right to use the land for the purposes of a canal was acquired, the act of 1878 in no way affects the rights or interests of the claimants or prevents them from asserting such rights.

(Argued May 6, 1884; decided June 3, 1884.)

APPEAL from order of the Board of Claims, made September 14, 1883, dismissing a claim against the State presented to it by the appellants, upon the ground that the facts alleged do not constitute a valid claim.

The facts alleged are set forth substantially in the opinion.

*Hallam Eldredge* for appellants. The State did not take a fee in the land. (Mills on Eminent Domain, §§ 50, 149, 150, 151 ; *Heyward* v. *Mayor, etc.,* 7 N. Y. 325 ; *Brooklyn Park Comm'rs* v. *Armstrong,* 45 id. 241 ; *Wash. Com.* v. *P. P., etc., Co.,* 68 id. 597 ; *Story* v. *N. Y. El. R. R. Co.,* 90 id. 172, 176 ; *In re P. P. & C. I. R. R. Co.,* 16 Hun, 261.) Even if the State took a fee, an obligation in the nature of a contract existed on its part to keep up the canal or indemnify claimants for loss arising from its abandonment. (*Sweet* v. *Buffalo,* 79 N. Y. 301 ; *Story* v. *N. Y. El. R. R. Co.,* 90 id. 134, 157, 172, 177 ; *Landon* v. *Mayor, etc.,* 93 id. 129 ; Mills on Eminent Domain, §§ 49, 105 ; *Heyward* v. *Mayor, etc.,* 7 N. Y.

325; Cooley on Legal Limitations, 557–559; *Fletcher* v. *Peck*, 6 Cranch, 87; *B'k of Auburn* v. *Roberts*, 44 N. Y. 192; *People* v. *Mayor, etc., of Brooklyn*, 4 id. 423, 424; *Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 9, 16, 28, 35; *Hartwell* v. *Armstrong*, 19 Barb. 166, 170–172; *Taylor* v. *Porter*, 4 Hill, 140.) The Court of Claims should have heard the case, as on the face of the papers the claimants had at least an equitable claim against the State. (*B'k of Auburn* v. *Roberts*, 44 N. Y. 192, 201.)

*Denis O'Brien*, attorney-general, for respondent. If the claimants had title to the adjacent lands from Squires and Abbott, such grant would not carry with it any interest in the land taken by the canal authorities. (*In re N. Y. C. R. R. Co.* v. *B.*, *N. Y. & E. R. R. Co.*, 49 Barb. 501.) When these lands were appropriated for canal purposes the fee became absolutely vested in the State. (1 R. S. [7th ed.] 643, § 52; *Rexford* v. *Knight*, 15 Barb. 627; 11 N. Y. 308; *Higgins* v. *Reynolds*, 31 id. 151; *Heyward* v. *Mayor, etc.*, 7 id. 214; *Baker* v. *Johnson*, 2 Hill, 342, 348; *People* v. *Hayden*, 6 id. 359; *Snyder* v. *R. R. Co.*, 13 Weekly Dig. 329.) The benefits and advantages intended by the statute to be taken into account by the canal appraisers were not those derived from a direct use of the canal, but referred to the indirect advantages obtained by the adjacent owners from rise in values, etc., occasioned by the construction of the canal. (*Burbank* v. *Fay*, 65 N. Y. 64.)

MILLER, J. The appellants presented to the Court of Claims a demand for damages which rests upon the ground that as assignees or heirs at law they are the owners in fee and hold title to a piece or parcel of land situate in the city of Binghamton, which was formerly taken by the State upon appraisal duly made for the purpose of constituting a portion of the Chenango canal.

It appears that on the 1st day of July, 1839, the land in question, containing forty-two one-hundredths of an acre, was owned by Lewis Squires and Joseph B. Abbott in connection

with other lands upon which there had been a hotel, which was destroyed by fire and which was being rebuilt with a canal frontage at the time. Proceedings were instituted before the canal board by which these lands were appropriated for the use of the Chenango canal, and an appraisal was had by the canal appraisers, pursuant to statute, and the damages were appraised at $2,500, and it was determined that the benefits conferred by the construction of the canal upon the owners of the property were greater than the damages sustained by them by the appropriation of the land for canal purposes, and no damages, over and above said benefits, were appraised to the owners of the land. The State entered upon and took possession of the land and constructed and operated the canal until June 4, 1878, when by an act of the legislature the State released to the city of Binghamton these premises, together with the remainder of that portion of the Chenango canal lying within the limits of the city, and authorized the city to take possession of and use the same for a public street, to be known as State street, in said city. The premises in question are forty-eight feet in width upon Court street, and the claimants allege their value to be $400 per front foot, amounting in all to $19,200, and they claim in this proceeding that the State is liable either to return and surrender said premises to them, or pay them the market value of the same. The claimants aver other acts of the legislature providing for the entire abandonment of the Chenango canal by the State and for the disposition of its lands, and they complained particularly of the donation of the lands by the State to the city of Binghamton under the act of 1878. They also allege that the municipality of Binghamton proceeded to lay out a street, to fill in, grade and otherwise change the relative status of the canal surface, so as to completely destroy the basement of the hotel, and to impose large assessments and onerous charges and burdens upon claimants as owners of the residue of the premises.

The Court of Claims dismissed the complaint as against the State on the ground that the papers filed did not constitute a

valid claim against the State, and refused to take testimony in regard to the same.

The claim of the appellants is founded on the ground that the State, after taking the land and paying no consideration therefor, except in the prospective benefits to be derived from the construction of the canal, abandoned the same and released to the city of Binghamton its right to the land taken, and authorized the city to take and use the same for a public street. We are unable to see any legal principle upon which the State could be made liable to the claimants for damages alleged to have been sustained by reason of the abandonment of the canal. The State took possession of the land in question, by virtue of chapter 32 of the Laws of 1833, for the use and purpose of a water-way or canal designated as the Chenango canal. The damages accruing to the owners, by reason thereof, were ascertained by the canal appraisers in pursuance of the provisions of 1 Revised Statutes (7th ed.), page 642, section 46, which make it the duty of the appraisers " to make a just and equitable estimate and appraisement of the damages and benefits resulting to the persons interested in the premises so appropriated from the construction of the work for the purpose of making which such premises shall have been taken," and a determination was made in pursuance of law by virtue of which the State took possession of the premises.   (See § 50, 1 R. S., *supra.*) No question is made but what the statutes, in respect to the taking of lands for canal purposes, were fully complied with, and that the State became possessed of and entitled to the same according to law.   The act of the appraisers in fixing the amount of the damages sustained by the owners of the land was an adjudication of all damages arising from the taking of the land, and upon well-settled principles would seem to be conclusive against the parties interested in the same.   Section 46, which requires an equitable estimate and appraisal of the damages, evidently means any injuries which might be sustained by reason of the taking of the land and included every species of damages arising therefrom.   It not only embraced the loss which might be sustained at the time, but all future, prospect-

ive and contemplated losses which might be incurred. It was the duty of the appraisers to look at the facts and circumstances surrounding the case, and in view of them to determine what would be a just and equitable estimate of the damages without reservation and having due regard for any contingency which might happen. Their decision included an estimate of all damages of every name, nature and description, and when it was actually made according to law no other claim could exist for damages. By the taking of the land and the appraisal of the damages arising from the same, the State made no guaranty or covenant that the canal would be used for any period of time, or that it should never be abandoned. Nor is there any ground for the assumption that the canal appraisers, in fixing the amount of damages which the owners sustained, and in considering the probable benefits which might accrue by reason of the construction of the canal, based their estimate upon the theory that the canal was to be used and operated for all future time. It is a legitimate inference that they considered that the time which it might be used might depend upon unforeseen contingencies, and that in the progress of improvement the period might arrive when, as a means of transportation, the canal would be useless and of no account. Whether this be so or otherwise can make no difference, as the appraisal and estimate constituted one entire matter, to be made at the time upon just and equitable principles.

The rule is laid down by DWIGHT, Commissioner, in *Burbank* v. *Fay* (65 N. Y. 64), that the benefits and advantages intended by the statute to be taken into account by the canal appraisers were not those derived from a direct use of the canal, but referred to the indirect advantages obtained by the owner of the adjacent property, growing out of the rise of values, etc., occasioned by the construction of the canal. Under this rule there is no ground for claiming that the disuse of the canal, in consequence of its failure to answer the ends for which it was constructed, thus rendering its abandonment necessary, furnishes any reason for an additional claim for damages against the State. The owner of the land received the benefits arising from the

construction of the canal by the increased value of the property adjoining and the advantages accruing from its proximity to the canal.    For forty years, while the canal was in operation, the original owner of the land or his grantees reaped the advantages arising from its use, and whether they be more or less than the amount of damages and benefits estimated by the appraisers is of no consequence and presents no ground for an equitable claim against the State for additional damages.    It would be going very far to hold that the State, by taking the land for the benefit of the canal, entered into an obligation or contract that its use should be in perpetuity, and neither law nor equity sustains any such construction of the statute.

The position of the appellants, that the law authorizing the construction of the canal, and the judicial condemnation and appraisal of the land on the basis of benefits and advantages, constitute an agreement in the nature of a contract to give certain valuable facilities, privileges and rights in consideration for the lands taken, and that the voluntary abandonment of the canal by the State, and the conversion by State authority of the land taken to an onerous use inconsistent with the acquired rights, is a violation of the State's contract, and entitles the claimants to damages, is not well founded.    As we have already seen, there was no contract or obligation which compelled the State to continue the canal after it had become of no use, or which prevented its abandonment on that account.    If it was given up as of no use, the owners of the land and their grantees had received all the advantages of the benefits to be derived from the taking of the land, as the determination of the appraisers evinces, and the presentation of an additional claim for damages at this late day rests upon no legal or equitable principle.    The adjustment made in the determination referred to was final and conclusive; and is an effectual bar to any further demand for damages.    The damages have already been paid to, and received by, the original owner, and the claim for further damages is at this time without any merit to support it.

So far as relates to the position that the land taken has been converted to another and a different use, it may be observed that if the State acquired an absolute title to the fee in the land, then it had the right to dispose of it as it deemed best; if it did not take the fee, but only had a right to use the land for the purpose of the canal which was constructed, the act of 1878, which released the claim of the State to the city of Binghamton with the right to use the land for the purposes of a public street, does not in any way prevent the claimants, if they had any interest or title remaining in the land, from asserting their rights.

The learned counsel for the appellants claims that the State did not take a fee by virtue of the proceeding to take the land for the purpose of constructing the canal, and that there is no authority in this State which holds that where a fee is taken under the right of eminent domain, the value of the land taken can be paid or adjusted for by offsetting the benefits of the proposed public work to the adjoining premises. The right of the claimants to further damages is based mainly upon this ground. The question whether the State took a fee in acquiring the land is not now before us and it is not necessary to consider and pass upon the same. It is sufficient that the State in accordance with law acquired the right to the use of the land in question for the purpose of constructing the canal, for which compensation has been given and all damages adjusted, to authorize the conclusion that no further claim for damages exists or can be maintained against the State. It is enough that the State had the right to use the land without having an absolute fee. The act of 1878 was merely a release by the State of such title or interest as it had in the premises and nothing beyond that. If the State never took a fee, or if, upon the abandonment of the canal, the State had no title, it released none to the city. The act in question expressly provides that nothing contained therein shall affect the rights of individuals. It follows that if the State acquired no title to the land, or had lost what had been acquired, the claimants have a remedy by ejectment or otherwise against the party in possession of the

same. These questions, however, we are not now called upon to decide, and they must be determined when raised in a proceeding brought for that purpose against the proper parties. In such a case the effect of a donation of the land to the public, without notice to the owners of the adjoining lands and the rights of the parties interested, will then be a proper subject for consideration. If we assume that the State only acquired a right or an easement in the land for the purpose of constructing the canal, then the title of the State reverted to the former owners or their assigns or representatives upon its discontinuance. As these owners had received compensation by way of benefits upon the original construction of the canal, the only remedy was to recover possession of the land.

It is apparent, in view of the facts that no claim existed against the State, and the Board of Claims properly dismissed the case.

The order should be affirmed, with costs.

All concur.

Order affirmed.