THE STATE, LUCY KEAN, PROSECUTRIX, PLAINTIFF IN ERROR, v. THE CITY OF ELIZABETH, DEFENDANT IN ERROR.

1. The powers conferred by the "Act to appoint commissioners to lay out streets, avenues and squares in the city of Elizabeth," over streets previously laid out, were only to alter their lines and courses and to vacate certain of them.
2. If it be assumed that the act of April 1st, 1869, repealing the above-mentioned act, effectively makes the actions of the commissioners incapable of alteration or vacation by the municipal authorities, except on an application within the time therein prescribed, such effect will be confined to acts done within their authority.
3. There is no implied prohibition in the supplement to the city charter of March 9th, 1871, on the vacation of streets which are delineated on the commissioners' maps, but which they did not lay out; such a street may be vacated by the council, under the charter.
4. An ordinance to lay out and open a street falsely asserted that it had been laid out by the commissioners, and in condemnation proceedings an assessment for benefits was imposed on contiguous lands and paid by the landowner. *Held*, that the city is not estopped from vacating the street.

On error to the Supreme Court.   For opinion of Supreme Court, see 25 *Vroom* 462.

The writ of error brings up the record of a judgment dismissing a *certiorari* prosecuted by plaintiff in error.

The *certiorari* brought before the Supreme Court an ordinance of the city of Elizabeth, approved February 5th, 1891, vacating and closing a part of York street in that city.

Argued at March Term, 1893.

VOL. XXVI.                22

For the plaintiff in error, *Richard V. Lindabury.*

For the defendant in error, *Joseph Cross.*

The opinion of the court was delivered by

MAGIE, J.   Only one of the assignments of error has been argued and it is that which questions the power of the city of Elizabeth to pass the ordinance in question.

It is first contended that by existing legislation York street has been made incapable of being vacated by the municipal authorities.

By section 92 of the charter of the city, approved March 4th, 1863, the city council was empowered both to lay out and open streets and also to close or vacate streets.   The right of eminent domain was conferred, and the compensation to be made for lands taken and damages done was to be determined primarily by commissioners appointed by the city council.

By "An act to appoint commissioners to lay out streets, avenues and squares in the city of Elizabeth," approved March 13th, 1867 (*Pamph. L., p.* 210), exclusive power was conferred on five persons (1) to lay out streets, (2) to close certain streets, viz., those before laid out and not surveyed and recorded as public streets according to law, and (3) to designate alterations in the lines of streets already laid out, to secure uniformity with the streets laid out by the commissioners.   They were required by the act to make maps and plans of the streets laid out by them and the alteration of streets already laid out, made by them, and to file them in the office of the city clerk and duplicates of them in the office of the county clerk.   From the time of the filing of the maps and plans in the city clerk's office the act declared that they should be final and conclusive in respect to the owners of lands and all persons whomsoever.

By a supplement to the last-mentioned act, approved March 31st, 1869 (*Pamph. L., p.* 1034), and by a supplement to the city charter, approved April 1st, 1869 (*Pamph. L., p.* 1092), the provisions of both acts being in this respect identical, the

Commissioners' act was repealed, with the proviso that their
action and the streets and maps by them established and filed
should be final and conclusive unless vacated, altered, revised
or amended by the city council on an application made before
October 1st, 1869.

. By a further supplement to the charter, approved March
9th, 1871 (*Pamph. L., p.* 411), the city council was em-
powered to vacate, alter, revise or change any street laid down
on the commissioners' maps, on an application made before
December 31st, 1871.

The case shows that the commissioners caused York street
to be delineated on their maps, which were duly filed, and
that no application for its vacation was made before Decem-
ber 31st, 1871.

The contention is, that by force of the enacting proviso in
the repealers of 1869, York street became fixed and incapable
of vacation or alteration, and so the ordinance under review
was *ultra vires.*

Whether the legislature, by this proviso, effectively ex-
pressed an intent to make the acts of the commissioners shown
on their maps unalterable by the municipal authorities after
a certain day, is a question which was not argued.   Assuming,
without deciding, that such was the legislative intent, it is
obvious that it extended only to such acts as the commis-
sioners were authorized to do.

The power conferred to lay out streets obviously applied to
streets not before laid out,   No power was expressly given to
ascertain and award compensation for lands taken for the
streets laid out by the commissioners.   By the act as originally
passed they were authorized to make an assessment of dam-
ages and benefits for the closing or altering of streets, and a
clause in section 8 implied an authority to proceed to open
streets.   But, by an amendatory act, approved April 9th,
1867 (*Pamph. L., p.* 875), they were deprived of authority
to make such an assessment, and an amendment removed, also,
any implication of authority to open streets.   Reading the
acts together the plain intent was to confer on the commis-

sioners the power to designate where new streets should be and to leave to the city council the power to condemn the lands necessary to open the streets pursuant to the provisions of the charter.

But the case further shows that York street was, when the Commissioners' act became law, a street already laid out. This had been effected by an ordinance to lay out and open York street, approved July 1st, 1865, for, although no proceedings had been taken to make compensation for lands taken thereby, yet the power to lay out, which was the only power the commissioners had, was thereby previously exerted, and that by competent authority. Therefore, all that the commissioners could do with respect to York street was to alter its lines, and perhaps to vacate it. If their maps indicate that they laid out York street, their act must be deemed to be unauthorized and *ultra vires*.

But the case further shows that the commissioners did not lay out York street. Their maps contain and constitute the record of their acts. *Central R. R.* v. *Elizabeth*, 6 *Vroom* 359; *S. C.*, 8 *Id.* 432. An examination of the maps discloses that York street as delineated thereon is marked as a street "already opened or laid out," and not as a street laid out by the commissioners. Their act was, therefore, a mere recognition of that street as already laid out, as it was in fact.

It was further argued that a comparison of the lines of York street as defined in the ordinance of 1865, with those shown on the commissioners' maps, indicates that the commissioners exercised their power to alter its lines and courses, and that it has been so brought within the operation of the proviso in the repealers of 1869. But a careful examination shows beyond doubt that the streets are practically identical.

It was also contended that the supplement of 1871 to the charter, which authorized the council to vacate and alter any street "laid down" on the commissioners' maps, on an application by a day named, impliedly prohibited such action afterward.

But the council already possessed power to vacate and alter

streets which, though delineated on those maps, were not within the commissioners' authority. The permission given by the supplement was, therefore, not intended to operate except as to acts within their authority and evidenced by their maps.

Another claim made on behalf of plaintiff in error is based on the following facts :

Another " Ordinance to lay out and open York street from Division street to Newark bay " was passed by the city council and approved June 16th, 1869. In different language its enactments are precisely like those of the ordinance of July 1st, 1865. But it describes York street as having been laid out by the commissioners and as designated on their maps filed in the city clerk's office. On July 14th, 1869, the council adopted a resolution reciting the ordinance of June 16th, 1869, and appointing commissioners to make an assessment of damages for lands taken. An award for damages was made to plaintiff in error, and an assessment for benefits was made upon her. The latter exceeded the former, and the difference was paid by her to the city.

The argument is that the condemnation proceedings were based on an ordinance which asserted that York street had been laid out by the commissioners, and so was incapable of being vacated ; that relying on the assertion, plaintiff in error paid the assessment, and that in consequence the city is estopped from denying the truth of the assertion and from vacating the street.

It need not be determined whether the ordinance of 1869 repealed that of 1865, nor whether plaintiff in error might not, by timely proceedings, have resisted its enforcement and the assessment thereon.

The contention cannot prevail.

The city council were not empowered to lay out a street which could not afterward be vacated when the public good required. What they could not do directly they could not do indirectly. Nor were they authorized to determine whether or not the commissioners had laid out a particular street.

The acts of the commissioners were evidenced by their maps, which were public records. Whether they had laid out a street could be and was intended to be determined by that record. In such cases the false assertion of the agents of the city cannot be relied on to raise an estoppel. *Mutual Benefit, &c.,* v. *Elizabeth,* 13 *Vroom* 235. Moreover, the record bound plaintiff in error, and gave notice of the real fact.

The judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, ABBETT, DEPUE, LIPPINCOTT, MAGIE, VAN SYCKEL, BOGERT, BROWN, CLEMENT, SMITH. 11.

*For reversal*—None.