REICHELDERFER ET AL. *v.* QUINN ET AL.

No. 9.  Argued October 17, 1932.—Decided December 5, 1932.

316

*Mr. Robert E. Lynch,* with whom *Messrs. William W. Bride* and *Vernon E. West* were on the brief, for petitioners.

*Mr. George E. Sullivan,* with whom *Messrs. Joseph A. Burkart* and *Henry I. Quinn* were on the brief, for respondents.

MR. JUSTICE STONE delivered the opinion of the Court.

This case is here on certiorari, 285 U. S. 535, to review a decree of the Court of Appeals of the District of Columbia, 53 F. (2d) 1079. Following its earlier decision in *Quinn* v. *Dougherty,* 30 F. (2d) 749, that court affirmed a decree of the Supreme Court of the District, enjoining the petitioners, the District Commissioners, from erecting a fire engine house in Rock Creek Park at a point near

the property of some of the respondents, and adjoining that of others.

The Commissioners are directed by Act of Congress, 45 Stat. 667, to build the engine house at the designated location within the park. The presence of such a structure will, it is admitted, diminish the attractiveness of respondents' lands for residence purposes and, in consequence, decrease their exchange value. Respondents contend that they have a valuable right appurtenant to their land, in the nature of an easement, to have the land used for park purposes, and that the Act of Congress, directing its use for other purposes, is a taking of their property without just compensation in violation of the Fifth Amendment.

For present purposes we assume that the proposed building will divert the land from park uses, and address ourselves to the question upon which the other issues in the case depend, whether the respondents, plaintiffs in the trial court, are vested with the right for which they invoke constitutional protection.

There is no contention that such a right arises as an incident to the ownership of neighboring land, as does an easement of light and air, under the law of some states. See *Muhlker* v. *Harlem R. Co.*, 197 U. S. 544, 564; compare *Marchant* v. *Pennsylvania R. Co.*, 153 U. S. 380. But it is argued that the right asserted, whether it be regarded as arising from a contract with the government or an interest in its lands, has a definite source in the transaction by which the park was created.

The court below found this source in the first paragraph of the Rock Creek Park Act, 26 Stat. 492, by which the lands taken for the park by purchase or condemnation were "perpetually dedicated and set apart as a public park or pleasure ground for the benefit and enjoyment of the people of the United States . . .," and in the as-

318

sessment under § 6,[1] of surrounding lands, including those of respondents, to the extent that they were "specially benefited by reason of the location and improvement" of the park. The question is thus one of construction of the statute; if it did not create the private rights asserted, it is unnecessary to invoke the police power, as petitioners do, to justify the construction of the engine house. Cf. *Jackman* v. *Rosenbaum Co.*, 260 U. S. 22, 31.

*First.* The respondents derived no rights against the government from the dedication of the park alone. The park lands purchased or condemned by authority of the Rock Creek Park Act were vested in the United States in fee. Section 3 of the Act twice declares that "the title" and once that "the fee" of the condemned lands shall vest in the United States. By dedicating the lands thus acquired to a particular public use, Congress declared a public policy, but did not purport to deprive itself of the power to change that policy by devoting the lands to other uses. The dedication expressed no more than the will of a particular Congress which does not impose itself upon those to follow in succeeding years. See *Newton* v. *Commissioners*, 100 U. S. 548, 559; *Connecticut Mutual Life Ins. Co.* v. *Spratley*, 172 U. S. 602, 621.

It is true that the mere presence of the park may have conferred a special benefit on neighboring owners and

---

[1] " Sec. 6. That the commission having ascertained the cost of the land, including expenses, shall assess such proportion of such cost and expenses upon the lands, lots, and blocks situated in the District of Columbia specially benefited by reason of the location and improvement of said park, as nearly as may be, in proportion to the benefits resulting to such real estate.

" If said commission shall find that the real estate in said District directly benefited by reason of the location of the park is not benefited to the full extent of the estimated cost and expenses, then they shall assess each tract or parcel of land specially benefited to the extent of such benefits as they shall deem the said real estate specially benefited. . . ."

enhanced the value of their property. But the existence of value alone does not generate interests protected by the Constitution against diminution by the government, however unreasonable its action may be. The beneficial use and hence the value of abutting property is decreased when a public street or canal is closed or obstructed by public authority, *Meyer* v. *Richmond,* 172 U. S. 82, 95; cf. *Whitney* v. *New York,* 96 N. Y. 240; *Fox* v. *Cincinnati,* 104 U. S. 783; *Kirk* v. *Maumee Valley Co.,* 279 U. S. 797, 802, 803; *Smith* v. *Boston,* 7 Cush. 254; *Stanwood* v. *Malden,* 157 Mass. 17; 31 N. E. 702, or a street grade is raised, *Smith* v. *Washington,* 20 How. 135; see *Mead* v. *Portland,* 200 U. S. 148, 162, or the location of a county seat, *Newton* v. *Commissioners, supra,* or of a railroad is changed. *Bryan* v. *Louisville & N. R. Co.,* 244 Fed. 650, 659. But in such cases no private right is infringed.[2]

Beyond the traditional boundaries of the common law only some imperative justification in policy will lead the courts to recognize in old values new property rights. Compare *International News Service* v. *Associated Press,* 248 U. S. 215, with *Cheney Bros.* v. *Doris Silk Corp.,* 35 F. (2d) 279. The case is clear where the question is not of private rights alone, but the value was both created and diminished as an incident of the operations of the government. For if the enjoyment of a benefit thus derived from the public acts of government were a source of legal rights to have it perpetuated, the powers of government would be exhausted by their exercise.

---

[2] Compare the decisions holding that access to a water line may be destroyed in the interest of navigation, *Gibson* v. *United States,* 166 U. S. 269; *Scranton* v. *Wheeler,* 179 U. S. 141; cf. *Greenleaf Johnson Lumber Co.* v. *Garrison,* 237 U. S. 251, or a tract of land, unrelated to that taken, incidentally damaged, *Sharp* v. *United States,* 191 U. S. 341; cf. *Richards* v. *Washington Terminal Co.,* 233 U. S. 546, 553, 554, without payment of compensation.

The case of a park is not unique as the court below seems to have thought.[3] See *Quinn* v. *Dougherty*, 30 F. (2d) 749, 751. It has often been decided that when lands are acquired by a governmental body in fee and dedicated by statute to park purposes, it is within the legislative power to change the use, *Clark* v. *Providence*, 16 R. I. 337; 15 Atl. 763; *Mowry* v. *Providence*, 16 R. I. 422; 16 Atl. 511; *Seattle Land & Improvement Co.* v. *Seattle*, 37 Wash. 274; 79 Pac. 780; *Reichling* v. *Covington Lumber Co.*, 57 Wash. 225; 106 Pac. 777; see *Higginson* v. *Boston*, 212 Mass. 583; 99 N. E. 523, or to make other disposition of the land. *Wright* v. *Walcott*, 238 Mass. 432; 131 N. E. 29; see *Brooklyn Park Commissioners* v. *Armstrong*, 45 N. Y. 234, 245; compare *East Chicago Co.* v. *East Chicago*, 171 Ind. 654; 87 N. E. 17; *Whitney* v. *New York, supra; Eldridge* v. *Binghamton*, 120 N. Y. 309; 24 N. E. 462. The abutting owner cannot complain; the damage suffered by him " though greater in degree than that of the rest of the public, is the same in kind." See *United States* v. *Welch*, 217 U. S. 333, 339.

---

[3] A different question is presented in the cases relied on by .the court below which indicate that a dedication of land to the public, by an individual, or a conveyance to a municipality, to be used as a park, is subject to a condition or imposes a trust that the use be continued, breach of which may be restrained. *Douglass* v. *Montgomery*, 118 Ala. 599; 24 So. 745; cf. *Cincinnati* v. *White*, 6 Pet. 431; *Sheffield & Tuscumbia Street Ry. Co.* v. *Rand*, 83 Ala. 294; 3 So. 686; see also, *Riverside* v. *MacLain*, 210 Ill. 308; 71 N. E. 408; *Price* v. *Thompson*, 48 Mo. 361; 3 Dillon, Municipal Corporations (5th ed.), § 1102. There, rights in the land or against the municipality were said to have been reserved in the grantor or created in the owners of neighboring land by the terms of the grant.

Equally distinguishable are the decisions which likewise deal with the authority of a municipality, not the power of the legislature, to divert park lands from park uses, but in which the lands were acquired by unrestricted purchase or by eminent domain. See 3 Dillon, *supra*, §§ 991, 1023,

*Second.* The fact that lands, including those now owned by respondents, were assessed for benefits, as directed by the Rock Creek Park Act, leads to no different conclusion. Respondents urge that the special benefits required to be assessed included those accruing from the perpetual maintenance of the park; that by virtue of the assessment they have paid for the right to enjoy those benefits in perpetuity. We may assume that the landowners acquired rights commensurate with the assessments authorized. But the statute does not purport to place restrictions on the park lands in their favor, and the decision of this Court sustaining the constitutionality of the assessment provision (*Wilson* v. *Lambert,* 168 U. S. 611), gives no hint that among the benefits for which they were required to pay was a right against the government to have the lands forever used as a park.

All that the statute says is that the lands acquired shall be perpetually dedicated as a park for the enjoyment of the people of the United States (§ 1) and that benefits shall be assessed (§ 6). Statutes said to restrict the power of government by the creation of private rights are, like other public grants, to be strictly construed for the protection of the public interest. *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, 544–548; *Christ Church* v. *County of Philadelphia,* 24 How. 300; *Knoxville Water Co.* v. *Knoxville,* 200 U. S. 22, 33; *Larson* v. *South Dakota,* 278 U. S. 429. Thus construed, the dedication of the park, a declaration of a present purpose, does not imply a promise to neighboring land-owners that the park would be continued in perpetuity. Cf. *Newton* v. *Commissioners, supra.* The benefit of a governmental obligation which the statute neither expresses nor implies obviously was not to be assessed.

We think that the benefits intended must be taken to be those obvious advantages which would accrue to lands in the vicinity of a park, because of their location, and

which would be reflected in their market value, even
though there were no guaranty that the park would be
continued for any particular length of time.[4]  See *Wilson*
v. *Lambert, supra,* 617; cf. *Susquehanna Power Co.* v.
*State Tax Commn.,* 283 U. S. 291, 296; *Burbank* v. *Fay,*
65 N. Y. 57, 64.  So it was held in *Thayer* v. *Boston,* 206
Fed. 969, where contentions very similar to those made
here were rejected.  See also *Brooklyn Park Commission-
ers* v. *Armstrong, supra,* 245.  The same result has been
reached with regard to the assessment of benefits arising
from other types of public improvements, *Whitney* v. *New
York, supra,* 246; *Chicago* v. *Union Building Assn.,* 102
Ill. 379, 397; *Kean* v. *Elizabeth,* 54 N. J. L. 462; 24 Atl.
495, affirmed 55 N. J. L. 337; 26 Atl. 939; see *Home for
Aged Women* v. *Commonwealth,* 202 Mass. 422, 429, 430;
89 N. E. 124; 1 Nichols, Eminent Domain (2d ed.), § 116,
and is implicit in the statement, frequently made, that
such assessments are an exercise of the taxing power.  See
*Bauman* v. *Ross,* 167 U. S. 548, 588; *Wilson* v. *Lambert,
supra,* 614; *Memphis & Charleston Ry.* v. *Pace,* 282 U. S.
241, 245.

---

[4]As originally introduced and reported, the bill authorizing and es-
tablishing the park (S. No. 4, 51st Cong., 1st Sess.) had no provision
for the assessment of benefited property.  21 Cong. Rec. 96, 353, 902,
1109, 2371, 2578–90.  Such a method of financing was suggested by
Representative Payson, *ibid.* 2580, who offered an amendment em-
bodying this plan, *ibid.* 3939, which, after conference, was adopted,
in substance, as § 6.  See *ibid.* 3952–3, 5300–3, 5673, 5902–3, 5988,
6163, 10417–9, 10457–8, 10441–4.  In explaining the assessment
provision on the floor, Mr. Payson said: " Suppose that a man
owns a piece of property, distant, we will suppose, a quarter of a mile
from the park and that piece of property is worth today $1,000.
Now, if by reason of the expenditure made by the Government in this
great public improvement this man's property should become, in the
judgment of the commission, worth $2,000, the direct benefit thus
arising to the property would be assessed against it to assist in paying
for the proposed improvement," *Ibid,* 3940,

The possibility that the United States might, at some later date, rightfully exercise its power to change the use of the park lands, so far as it affected present value, was a proper subject for consideration in valuing the benefits conferred. Cf. *United States* v. *River Rouge Co.*, 269 U. S. 411; *Sears* v. *Street Commissioners*, 180 Mass. 274, 282; 62 N. E. 397; *Whitney* v. *New York, supra;* 1 Nichols, Eminent Domain, *supra.*

Property was not taken without just compensation by either the Rock Creek Park Act or the statute authorizing the construction of the fire house. The only taking occurred when the lands were condemned for the park. Just compensation, the value at that time, *Vogelstein & Co.* v. *United States*, 262 U. S. 337; *United States* v. *New River Collieries Co.*, 262 U. S. 341, 344, was awarded if the benefits resulting from the proximity of the improvement, valued as the Act prescribed, were, as respondents assert, set off against the value of the property taken from the same owners. *Bauman* v. *Ross, supra; Whitney* v. *New York, supra; Eldridge* v. *Binghamton, supra;* see *Matter of City of New York*, 190 N. Y. 350, 357, 360; 83 N. E. 299.

We note, but do not discuss at length, the objection that the statute authorizing the construction of the fire house is invalid because inconsistent with regulations under the Zoning Act for the District (41 Stat. 500), setting apart the area in the vicinity of the park for residential properties of the highest class. It is enough to say that the zoning regulations are not contracts by the government and may be modified by Congress. The record and briefs disclose no facts which require us to consider how far the exercise of the power to modify may be subject to constitutional limitations.

*Reversed.*