**UNITED STATES v. 10,245 ACRES OF LAND, MORE OR LESS, SITUATE IN GRANT COUNTY, WASHINGTON, et al.**

**No. 211.**

District Court, E. D. Washington, N. D.
June 19, 1943.

Edward M. Connelly, U. S. Atty., and Edward J. Crowley and Joseph L. Thomas, Sp. Attys. for Department of Justice, all of Spokane, Wash., for petitioner.

Funkhouser & Twohy, of Spokane, Wash., for defendant Emil Brunsch.

SCHWELLENBACH, District Judge.

The plaintiff instituted this action for condemnation and filed its declaration of taking on September 9, 1941. It deposited the sum of $998 in reference to tract 1, parcel 4, on which defendant Emil Brunsch claimed to be the owner of a valid homestead entry. This entry was made on June 29, 1938, under the provisions of the Stock Raising Homestead Act of December 29, 1916, as amended, 43 U.S.C.A. § 291 et seq. Under that statute defendant had five years within which to perfect his claim of homestead, or until July 1, 1943. The statute requires that for a period of at least three years prior to the expiration date, defendant must have established and maintained his permanent residence upon the land. It further requires that within three years from the date of the entry, he shall have placed permanent improvements upon the premises tending to increase the value of the land for stock raising purposes in the amount of 62½ cents per acre. As of September 9, 1941, the date of taking, the defendant had at no time established a permanent residence upon the lands involved nor had he placed thereon the required improvements. Thereafter, on April 24, 1942, proceedings were commenced in the United States Land Office looking to the cancellation of defendant's entry. After hearings thereon, the entry

was cancelled by order of the General Land Office on January 12, 1943. The purpose of these proceedings is to determine the just compensation to be paid to the defendant for the property taken from him as on the date of taking. By stipulation, the matter was submitted to the court, a jury having been waived.

■ Defendant's initial position is that the petitioner is bound by its deposit and is estopped from contesting defendant's right to secure at least the amount deposited. That contention is disposed of by United States v. Miller, 317 U.S. 369, 381, 63 S.Ct. 276, 284, 87 L.Ed. ——: "The payment is of estimated compensation; it is intended as a provisional and not a final settlement with the owner; it is a payment 'on account of' compensation and not a final settlement of the amount due."

■ In their briefs counsel have submitted many decisions to assist the court in determining the precise nature of the property right of an entryman on the public lands of the United States during the period intervening between the time of the entry and the final perfection of his title in the form of a patent from the United States Government. I have read these cases and many more. At first blush, they would seem to be conflicting and confusing. The conflicts, however, are all subject to reconciliation when the cases are analyzed in the light of the particular statutes under which such lands became available for entry. For the purpose of this decision, I will accept what the defendant characterizes as the correct doctrine as laid down in Knapp v. Alexander-Edgar Lumber Company, 237 U.S. 162, 35 S.Ct. 515, 516, 59 L.Ed. 894: "From the making of his entry the homesteader has the right of possession as against trespassers and all others except the United States; he has also an inchoate title, subject to be defeated only by failure on his part to comply with the requirements of the homestead law as to settlement and cultivation. So long as he complies with these laws in the course of earning a complete right to the lands as against the government he has a substantial inceptive title, sufficient as against third parties to support suits in equity or at law."

Assuming that defendant, on the date of taking, had an inchoate title subject to being defeated only by failure on his part to comply with the requirements of the homestead law, the question here is what was the value of that which was taken from him? The Supreme Court has stated this value to be the market value. Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206; United States v. New River Collieries Company, 262 U.S. 341, 344, 43 S.Ct. 565, 67 L.Ed. 1014. In the case of United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 81, 33 S.Ct. 667, 678, 57 L.Ed. 1063, the Supreme Court used the term "its fair market value." I think, perhaps, the best statement was made by Mr. Justice Holmes in City of New York v. Sage, 239 U.S. 57, 61, 36 S.Ct. 25, 26, 60 L.Ed. 143, where he described that which the owner was entitled to receive as the amount which "it fairly may be believed that a purchaser in fair market conditions would have given." Later, in Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236, the Supreme Court used the more precise phrase "market value fairly determined." Implicit in the term "fair market value" is the assumption of a situation in which both the buyer and seller are informed concerning all the relevant factors reasonably to be considered in determining fair market price. Judged by these standards, the question to be answered here is a very simple one. It is, how much would an informed buyer have been willing to pay the defendant for his inchoate title to the lands here involved on September 9, 1941? The answer is nothing. The defendant had not complied with the homestead laws of the United States and he had no substantial inceptive title for which any informed buyer would have been willing to pay. The General Land Office had the right, at any time, to cancel his entry. That which he lost was valueless. The Supreme Court has held that the possibility of exercise by a governing body of its power to make changes affecting values is a proper subject for consideration in fixing values. Reichelderfer v. Quinn, 287 U.S. 315, 323, 53 S.Ct. 177, 77 L.Ed. 331, 83 A.L.R. 1429. Since the defendant had nothing of value which was taken from him, there was no constitutional obligation on the United States to pay compensation to him.

■ In reaching this conclusion, I have by-passed the Government's contention as to the effect in this case of the later cancellation proceedings in the General Land Office. The United States Government acquired full and complete title upon the filing of the declaration of taking. Noth-

ing was or could be added to it by the action of the Land Office. So far as this condemnation proceeding is concerned, what happened there and then amounted to nothing more than shadow-boxing. The United States could not, by proceedings in its Land Office, cancel that which it had already destroyed by these proceedings in this court.