L. L. RICHARD, Margaret K. Richard, Ida Ruth Richard, John F. Whitmore, R. E. Richard, Kenyon E. Richard, T/A Richard Company, a copartnership,

v.

UNITED STATES

v.

STONE CORRAL IRRIGATION DIS-TRICT, Third-party Defendant.

No. 298–57.

United States Court of Claims.

Oct. 5, 1960.

Newell A. Clapp, Washington, D. C., Erling H. Kloster, Visalia, Cal., and Robert M. Lichtman, Washington, D. C., on the briefs, for plaintiffs.

Howard O. Sigmond, Washington, D. C., with whom was Perry W. Morton, Asst. Atty. Gen., for defendant.

John Locke, Visalia, Cal., for Stone Corral Irrigation District, third-party defendant. Paul J. Sedgwick, Washington, D. C., and Locke & Price, Visalia, Cal., were on the brief.

WHITAKER, Judge.

Plaintiffs are the owners of 71 acres of land planted in orange and lemon trees located in Tulare County, California, commonly referred to as the Stone Corral Orchard. They sue to recover just compensation for the alleged taking of this property for public use.

They claim that the defendant in the construction and operation of the Friant-Kern Canal, part of which runs, first to the east, and then to the south of plaintiffs' property, has so raised the ground water underneath the Stone Corral Orchard that the soil in the root and agricultural zones has become inundated, thus rendering the land unsuitable for the cultivation and growth of citrus trees. Plaintiffs contend that the defendant has thereby taken its entire orchard and is liable for its full value. In the alternative, they claim defendant has taken a seepage easement under their property and is liable for the amount by which the exercise of such easement has reduced its value.

The defendant denies that there has been a taking of either the fee or an easement within the meaning of the Fifth Amendment. To protect its interest, however, it has filed a contingent claim against the third party defendant, the Stone Corral Irrigation District, a political subdivision of the State of California, contending that in the event the court determines that plaintiffs are entitled to recover, the District, by reason of the contract between it and the United States Bureau of Reclamation, must indemnify the defendant for such liability.

■ Did defendant, by the construction of this canal, take either the fee or an easement in plaintiffs' property, within the meaning of the Fifth Amendment? The facts are set out in great detail in the findings. They show conclusively that the seepage from portions of the Friant-Kern Canal located to the east of plaintiffs' property was the substantial and controlling cause of the rise in the ground water level in the Stone Corral Orchard. Defendant's position that seepage is only one of the many factors which caused plaintiffs' damage is untenable. Defendant says that other factors, such as rain, natural runoff, contribution from natural ground water sources, and drainage resulting from generally increased irrigation in the District through use of canal waters, contributed to the damage; but each of these factors, with the exception of the increased irrigation in the District due to the availability of canal waters, was present prior to opening of the canal in 1950, and none of them ever presented any problem in the operation of plaintiffs' orchard. Nor does the evidence show that the ground water level on plaintiffs' property was increased except in a minor way by the increased irrigation in the District. On the contrary, the evidence is overwhelming that the controlling cause of the adverse water condition in the orchard was due to seepage from the canal. The Trial Commissioner has found, and we agree, that but for this seepage problem, these other factors would have had no adverse effect on plaintiffs' property.

In the instant case, the defendant says that no intent to take plaintiffs' property was either expressed or can be implied from the defendant's action. It says that the conditions in the Stone Corral Irrigation District made it impossible for the Bureau of Reclamation to anticipate exactly where the ground water level would rise to a point which would affect adversely any particular property owner's agricultural operation, and, hence, it is impossible to say that the defendant intended to take this particular property or a seepage easement under it.

The direction of the flow of underground water can be predicted in only a general way, and there was no way to say with certainty exactly what would be the result of seepage from the canal. The Bureau of Reclamation, however, anticipated canal seepage. Its contract with the Stone Corral Irrigation District specifically provided that it anticipated seepage of approximately 2400-acre feet per year. It cautioned the District to keep a constant check on the ground water level, and to use the ground water for irrigation whenever possible. Certainly, the authorities must have anticipated that if the seepage was not sufficiently utilized it might well accumulate and raise the ground water level so as to destroy the agricultural usefulness of at least some of the land. Where this

seepage would accumulate was unknown, but that there would be seepage and that it might accumulate somewhere to a harmful extent was apparent.

■ We reiterate what we said in Cotton Land Co. v. United States, 75 F. Supp. 232, 109 Ct.Cl. 816, that it is not necessary to show that the defendant intended to take plaintiff's land; all that plaintiff need show is that the taking of its land was the natural and probable consequence of the acts of the defendant. It is not even necessary for plaintiff to show that defendant was aware of the taking of an interest in its property would naturally result from its acts. It is only necessary to show that this was in fact the natural and probable consequence of them.

In the instant case it appears that defendant in fact knew that there would be seepage and an accumulation of water unless it was carried off in some way. The only thing defendant did not know was where it would accumulate. It knew someone's land might be affected, but not whose. If it were necessary to show an intent—but it is not—an intent to commit acts that would probably result in the taking of some land has been shown. The particular land that might be taken was not within the control of defendant, but depended upon the laws of nature; but defendant did contemplate the possible taking of an interest in that land to which the forces of nature directed the accumulation of water caused by its acts.

■ We must hold that plaintiffs' injury was the natural consequences of defendant's act, and that the defendant has taken a seepage easement under and through plaintiffs' property. Defendant has not taken the fee in plaintiffs' land. The use of a portion of it for the growing of citrus trees has been destroyed, but the land is still valuable for the growing of so-called row crops.

The next question to be determined is whether the third party defendant, the Stone Corral Irrigation District, must indemnify defendant for any compensation it must pay plaintiffs. We do not think it is under an obligation to do so.

■ The Friant-Kern Canal is owned and operated by the Bureau of Reclamation of the Department of the Interior, an instrumentality of the United States, and it is under its exclusive control. The Canal was constructed, as part of the Central Valley Project in California, primarily for irrigation purposes, but also for flood control and the improvement of navigation on the San Joaquin River. The seepage of water from the Canal under plaintiffs' property was, as we have previously stated, a natural consequence of this construction. The record is clear that the seepage in question was due to the carriage of water in the canal, and that it occurred prior to receipt of any water by the Stone Corral Irrigation District. The latter was in no way responsible for the seepage.

■ The defendant, however, says that its contract with the District indemnified it against any liability which might arise from canal seepage. Defendant relies upon sections 3(c), 7(c), and 14(e) of the contract. These provisions read in pertinent part as follows:

"3(c)  The quantities of water to be furnished to the District by the United States pursuant to this contract have been computed on the assumption that approximately two thousand four hundred (2,400) acre-feet of water will seep each year from the Friant-Kern Canal into the strata underlying the lands of the District.  *  *  *

"7(c)  The United States shall not be responsible for the control, carriage, handling, use, disposal, or distribution of water which may be furnished to the District hereunder, outside the facilities then being operated and maintained by the United States, nor for claim of damage of any nature whatsoever, including but not limited to property damage,  *  *  *.

"14(e)  No liability shall accrue against the United States, its officers and employees because of damages caused by the operation of the distribution system by the District."

These provisions of the contract do not shift from defendant to the Water District responsibility for the acts of the defendant. The District did not obligate itself to utilize all water that seeped from the canal or to indemnify defendant against liability therefor if it failed to do so. Defendant has no right to recovery over against the Stone Corral Irrigation District.

Finally, what was the extent and the value of the easement which has been taken by the defendant? Plaintiffs' property is divided into two distinct orchards. Approximately 31 acres in the southern part of the property are planted in lemon trees; the northern section of 35 acres is planted in orange trees. Three of the remaining five acres are devoted to living quarters and farm buildings, and the other two acres are an alkali area which is not utilized for any purpose.[1]

The injurious effect of the canal seepage first became apparent to plaintiffs on or about September 30, 1955, and since that time the water level in the orange grove has risen to such an extent that at the time of the trial approximately two-thirds of the orange trees had been destroyed. The remaining one-third located in the south-east portion of the grove appeared healthy, but because of the presence of water in the immediate vicinity of the roots their continued well-being is doubtful. It seems clear that the orange grove is no longer a feasible commercial operation.

The lemon grove to the south, on the other hand, shows no injurious effect from the rise in the ground water in its vicinity. While trees are more resistant to adverse moisture conditions, the continued vigor of these trees is due to the fact that the ground water in this portion has not risen nearly as far as it has in the orange grove. In 1956 all of the orange grove had a ground water table of five feet or less with a substantial portion being two to three feet. However, as of 1958 the water level in the greater part of the lemon grove was approximately eight to thirteen feet, with only a small part of the grove to the north showing a water table of five feet.

■ While the evidence is clear that canal seepage has caused crippling damage to the orange grove and has in fact rendered its further commercial operation infeasible, this is not true with regard to the lemon orchard. Nor does the evidence introduced at the trial tend to show that in the future the lemon grove will necessarily or even probably be destroyed by canal seepage. The slope of plaintiffs' property is such that water coming in from the east will generally flow west and north, and water entering the property from the south will also follow this general flow. Water entering from the east or south tends to pass underneath the lemon grove and to flow in the direction of the orange grove. The probabilities are that the lemon grove will not be harmed; at least we cannot say with any degree of certainty that it will be. Plaintiffs have not shown a taking of the lemon grove and are entitled to recover nothing on that account.

■ Plaintiffs say that the fact that the orange grove was taken constitutes a threat to eventually take the lemon grove. The facts do not support the statement. The lemon grove is closer to the canal than the orange grove, but the water passed under the lemon grove at a depth of from 8 to 13 feet, and then rose. This indicates that the lemon grove is immune from destructive seepage, rather than subject to it. At least there has been no showing that in the natural course of events the lemon grove will be destroyed and, hence, there has been no showing of a taking. If at some later date conditions should change and the water table under the lemon grove should rise and destroy the lemon trees, plaintiffs would then have a cause of action

---

[1]. The seepage has not impaired the value or usefulness of these five acres and plaintiffs do not claim compensation therefor, under the easement theory which we have adopted.

but not before. Cf. Atchison, Topeka and Santa Fe Ry. v. United States, Ct. Cl. 278 F.2d 937.

Plaintiffs' case does not come within the rule that, where the taking of a part of a tract of land renders valueless the remainder, the owner may recover the value of the whole tract. The value of the lemon grove was as great after the destruction of the orange grove as it was before.

We hold that defendant is liable to plaintiffs for the taking of a seepage easement at a depth of from two to three feet and below under the north 35 acres of plaintiffs' property, and that plaintiffs are entitled to just compensation therefor.

 The valuation of the orange grove, destroyed by the taking of the easement, before September 1955, the date of the taking, has been fixed by the Trial Commissioner at $3,500 per acre, and after the taking, at $650 per acre. This finding is supported by substantial evidence and we adopt it as the finding of the court. However, we do not think it necessarily follows that just compensation is the difference between the two. The construction of the Friant-Kern Canal was the cause of the destruction of plaintiffs' orange grove, but, at the same time, it probably greatly enhanced the value of plaintiffs' land for other uses. In arriving at "just compensation" one ought to be offset against the other. Dick et al. v. United States, Ct.Cl., 169 F.Supp. 491; and compare United States v. Miller, 317 U.S. 369, 375, 63 S.Ct. 276, 87 L.Ed. 336; Reichelderfer v. Quinn, 287 U.S. 315, 323, 53 S.Ct. 177, 77 L.Ed. 331.

In addition, the report of the Trial Commissioner shows that after the date of the taking plaintiffs continued to gather oranges from the grove and market them. If the profits derived therefrom exceeded the profits to be derived from utilizing the land as so-called bare lands, that is, for the growing of row crops, the excess should be deducted from the difference in the value of the land before and after the taking.

The report of the Trial Commissioner does not deal with either of these two questions; nor have the parties requested findings thereon; however, the court thinks that these are proper matters for consideration and, hence, on its own motion, it remands the case to the Trial Commissioner for the sole purpose of taking testimony on these two questions. Upon the incoming of the Trial Commissioner's report, the parties may file exceptions thereto, supported by such briefs as they care to file.

Defendant's contingent claim against the third party defendant will be dismissed.

It is so ordered.

JONES, Chief Judge, and DURFEE, LARAMORE, and MADDEN, Judges, concur.