United States Court of Appeals
For the First Circuit


No. 98-1810

GRANITE STATE CHAPTER,
ASSOCIATION OF CIVILIAN TECHNICIANS,

Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY,

Respondent.



ON PETITION FOR REVIEW OF A DECISION AND ORDER
OF THE FEDERAL LABOR RELATIONS AUTHORITY



Before

Torruella, Chief Judge,

Aldrich and Cudahy, Senior Circuit Judges.



Daniel M. Schember, with whom Gaffney & Schember, P.C. was on
brief, for petitioner.
Gina A. Taylor on brief, for National Federation of Federal
Employees, amicus curiae.
Judith A. Hagley, Attorney, Federal Labor Relations Authority,
with whom David M. Smith, Solicitor, and William R. Tobey, Deputy
Solicitor, Federal Labor Relations Authority, were on brief, for
respondent.



April 1, 1999
CUDAHY, Senior Circuit Judge. New Hampshire takes
politics seriously. Every four years, presidential hopefuls
coffee-and-chili their way through the Granite State, giving New
Hampshirites unparalleled personal access to the political elite. 
The local chapter of the Association of Civilian Technicians (the
Union) apparently wanted a piece of this action and, during
collective bargaining negotiations with the New Hampshire National
Guard in 1996, submitted a proposal which would have allowed union
representatives to lobby these and other politicians:
Association officials will be granted not to
exceed two days annually, official time to
represent the bargaining unit by visiting,
phoning, and writing to elected
representatives in support of or opposition to
pending desired legislation which would impact
the working conditions of employees
represented by the [union].

The Union cited 5 U.S.C. 7102(1) and 7131(d) (effective Jan. 11,
1979) as support for their proposal. Section 7102(1) provides in
pertinent part that unionized government employees have the right
to act for a labor organization in the
capacity of a representative and the right, in
that capacity, to present the views of the
labor organization to heads of agencies and
other officials of the executive branch of the
Government, the Congress, or other appropriate
authorities.

Section 7131(d), which defines permissible uses of "official time,"
further provides that any employee:
in connection with any other matter covered by
this chapter . . . shall be granted official
time in any amount the agency and the [union]
agree to be reasonable, necessary, and in the
public interest.

The Union claimed these provisions read together guaranteed its
representatives a reasonable amount of official time to lobby. 
The National Guard refused to bargain over the proposal,
also citing statutory support for its decision. Specifically, it
argued that pursuant to 5 U.S.C. 7117(a)(1) its obligation to
negotiate did not extend to proposals which violated the law. The
Guard contended that the Union's request, if granted, would violate
three separate anti-lobbying statutory provisions -- sections 8001
and 8015 of the 1996 Department of Defense Appropriations Act, Pub.
L. No. 104-61, 109 Stat. 636, 651, 654 (1996) (the Act) and 18
U.S.C. 1913. The Union filed an unfair labor practice claim,
charging failure to bargain in good faith, which the parties
submitted to the Federal Labor Relations Authority (the Authority)
on stipulated facts.
The Authority dismissed the complaint with one member
dissenting. See Office of the Adjutant General, New Hampshire
National Guard, 54 F.L.R.A. 301 (1998) (slip op.). It first found
that the Union's proposal was consistent with both 1913 and
8001. The Authority did find, however, that the proposal
conflicted with 8015, which provides in pertinent part:
None of the funds made available by this Act
shall be used in any way, directly or
indirectly, to influence congressional action
on any legislation or appropriation matters
pending before the Congress.

The Authority held that the unambiguous and unqualified language of
this section barred official- time lobbying by Department of
Defense employees in 1996. It also rejected as inapposite the
dissenting member's reliance on General Accounting Office (GAO)
interpretations of other similar provisions and determined that
resort to other indicia of Congressional intent was unnecessary
given the clarity of 8015's language. See New Hampshire National
Guard, slip op. at 10-13. Because the Union's proposal conflicted
with 8015, the National Guard was under no obligation to
negotiate over it, and the Authority therefore dismissed the
complaint. 
The Union appeals, and, as an initial matter, the parties
contest our standard of review. The Union argues that because the
Authority has no special competence interpreting Department of
Defense appropriations acts, its construction of the Act is due no
deference. Review should be de novo, the Union concludes. The
Authority claims that our review is more limited; we should
"respect" its reading of the Act and defer to it so long as it is
reasonable. Frequently, the resolution of this standards debate
disposes of the substantive issue. Not so here: whatever standard
we apply, we reach the conclusion that the Authority's decision was
not in error.
We begin with the elementary proposition that one
Congress is not bound by the decisions of a previous Congress. 
See, e.g., Reichelderfer v. Quinn, 287 U.S. 315, 318 (1932);
Passamaquoddy Tribe v. Maine, 75 F.3d 784, 789 (1st Cir. 1996). 
Times change, and Congress repeals some laws, adjusts others and
passes new legislation to meet the challenges of the day and of its
own policy preferences. In most instances, Congress is explicit
about its intent to change the law. In other cases, however,
Congress is not so clear; the repeal is not explicit. Although
repeal by implication is disfavored, especially in instances in
which an appropriations bill is claimed to have repealed
substantive law, United States v. Will, 449 U.S. 200, 221-22
(1980), it is not forbidden. See id. at 222-24; Metlife Capital
Corp. v. M/V Emily S., 132 F.3d 818, 821-22 (1st Cir. 1997). If
one Congress clearly and manifestly makes known its intent to
supplant an existing law, a court can find repeal by implication. 
See, e.g., Metlife Capital, 132 F.3d at 822. Where, for example,
two statutes are in irreconcilable conflict, the later law, in
whole or in part, constitutes a repeal of the former. See id. 
This is such a case. The 104th Congress picked its terms
carefully, and we must give them their full effect. See, e.g., BFPv. Resolution Trust Corp., 511 U.S. 531, 537 (1994). It chose
unambiguous and unqualified language -- "none," "in any way,"
"directly or indirectly." This pleonasm leaves no room for doubt;
Congress simply changed its mind. The presence of exceptions in
other anti-lobbying provisions, including 18 U.S.C. 1913 and
8001 of the Act, only bolsters this conclusion. See, e.g.,
United Technologies Corp. v. Browning-Ferris Ind., Inc., 33 F.3d
96, 100-101 (1st Cir. 1994).
Even after some prodding at oral argument, neither the
Authority (for reasons we do not fully understand) nor the Union
(because it would lose) fully endorsed this conclusion. Instead,
the parties bickered over which statute was more specific (and
which two should be compared), whether reliance on sources other
than the statutory language might compel a different result and
whether the case implicated constitutional concerns. These
arguments are red herrings. Whether 8015 is more specific than
7102 -- and in one sense it is -- is part-and-parcel of the
initial textual inquiry. Section 8015's specificity is a clear and
manifest expression of Congress's intent to repeal the Union's
right to lobby. The Union also argues that Congress was not
concerned about unions lobbying, pointing to the legislative
history of 8015 and GAO interpretations of similar provisions
which suggest that Congress intended 8015 to bar only defense
contractors from lobbying the Department for more funds. None of
these sources, however, can explain the absence of any
qualifications in the clear language of 8015; Congress plainly
did not distinguish between defense contractors and unions
consisting of Defense Department employees. And, in any event, we
need not consult extrinsic sources when the plain meaning of the
statutory language is clear. See, e.g., Pritzker v. Yari, 42 F.3d
53, 67 (1st Cir. 1994). Finally, the Union's derivative
constitutional arguments are unpersuasive.
In 1996, Congress decided that Department of Defense
funds should not be used for lobbying and drafted and passed an
appropriations act to make this clear. For that fiscal year,
8015 repealed the Union's right to lobby Congress on official
time as otherwise guaranteed by 5 U.S.C. 7102. Thus, the Union's
proposal conflicted with 8015; the National Guard was under no
obligation to negotiate over the proposal; and the Authority's
dismissal of the unfair labor practice charge is AFFIRMED.