MARION COUNTY BOARD OF COM-
MISSIONERS et al., Plaintiffs,

v.

The MARION COUNTY ELECTION
COMMISSION et al., Defendants.

Supreme Court of Tennessee.

Feb. 20, 1980.

Thomas W. Graham, Kelly, Leiderman, Cameron, Kelly & Graham, P.C., Jasper, for plaintiffs.

William M. Leech, Jr., Atty. Gen., Kenneth R. Herrell, Asst. Atty. Gen., Nashville, for defendants.

## OPINION

HENRY, Justice.

Various issues of constitutional and statutory construction are involved in this appeal as of right.

The foremost question is the meaning of the phrase "next election occurring after the vacancy" as used in Article VII, Section 2 of the Constitution of Tennessee. The Chancellor held that this provision contemplated the regular August election. We concur in that holding for the reasons, and to the extent, set forth in the opinion in *McPherson v. Everett*, 594 S.W.2d 677 (Tenn.1980), released simultaneously with the opinion in the instant case.

We identify and discuss the remaining issues.

### I.

*The Status of the Office of County Judge*

The County Judge of Marion County, Eschol D. Hughes, resigned from office effective December 31, 1979. The County Legislative Body appointed a successor to serve until the August 1980 general election.

■ Article VII, Section 1, Constitution of Tennessee provides that "[n]o officeholder's current term shall be diminished by the ratification of this article." Judge Hughes was elected in 1974 for a term expiring in 1982. He, therefore, was under the protective umbrella of this proviso. The constitutional safeguard, however, is personal to the officeholder and protects his term, not the office. The Chancellor held that the office of county judge terminated with the resignation of the incumbent. We agree.

■ The effect of Section 5–602(2), T.C.A., a codification of Section 16, Ch. 934, Public Acts of 1978, which implemented the local government provisions of the amended Constitution, was to designate the county judge of Marion County to "serve as county executive until the regular August election in 1982."

The Marion County Board of Commissioners insists that this was an invalid designation of an individual to fill an office, under Article XI, Section 17, Constitution of Tennessee. Irrespective of the language used, it is clear from the supplemental act that in order to avoid having duplicating offices, and purely as a transitional measure, the county judge was clothed with authority and charged with the duties attendant upon the office of county executive. We recognized this "orderly transition" in *State ex rel. Maner v. Leech*, 588 S.W.2d 534 (Tenn.1979).

■ Further, there can be no doubt that the Legislature upon creating a new office may fill the vacancy by appointment. *Townsend v. Ray*, 174 Tenn. 634, 130 S.W.2d 96 (1939).

■ We find nothing unconstitutional in the action of the Legislature in designating the county judge to serve as county executive for the balance of his term. Nor do we find any constitutional infirmity in Section 5–603, T.C.A., providing that should a vacancy occur in the office of county judge, in these counties wherein the judge is temporarily serving as county executive:

(1) If a vacancy occurs prior to the qualifying date [1] for the election of a county executive, the county legislative body shall appoint a county executive to serve until a county executive is elected in the regular August election.

(2) If a vacancy occurs after the qualifying date for the election of a county executive, the county legislative body shall appoint a county executive to serve until a county executive is elected in the next succeeding general election or other county-wide election in such county.[2]

We recognized, and tacitly approved this scheme, by dicta, in *Leech v. Wayne County*, 588 S.W.2d 270, 272 (Tenn.1979). Now we expressly approve it. We reverse so much of the Chancellor's decree as held that

---

1. Qualifying date is referable to the general election.

2. Because the matter is not before us we decline to construe the phrase, "other county-wide election in such county."

this section conflicts with Article VII, Section 2 of the Constitution of Tennessee. In our view it furthers the constitutional provision.

## II.

### The County Executive

The regular term of the county executive in Marion County is four (4) years. Section 5–601, T.C.A. The present county executive serves until August 31, 1980, by virtue of his appointment. His successor will be elected at the regular August election in 1980 and will serve until August 31, 1982. This will bring Marion County into synchronization with the general statutory scheme. *See State ex rel. Maner v. Leech*, 588 S.W.2d at 542. This accords with the holding of the Chancellor.

## III.

### County Legislative Body Vacancies

There are two vacancies in the county legislative body for the terms expiring in 1982. These vacancies are governed by Section 5–502(b), T.C.A.[3]

The Chancellor held this entire sub-section to be unconstitutional and void to the extent that it provides for filling a vacancy in a county office except at a general August election because it is in conflict with Article VII, Section 2 of the Constitution.

We respectfully differ. When properly construed there is no conflict. Both the constitutional provision and the statute provide for the vacancy to be filled by the legislative body. They differ in that the Constitution provides that the appointed successor "shall serve until a successor is elected at the next election occurring after the vacancy"; while the statute provides that the successor shall "serve until the office is filled at the next general election, primary election or referendum."

In a word, the Legislature, superficially, has attempted to expand the language of the Constitution. Viewed differently the Legislature has exercised its right and duty to regulate the election process. In the case of *McPherson v. Everett, supra*, we went into this question at some length and concluded that Article VII, Section 2, was not self-executing and that the phrase "next election" does not include a primary election, and that a vacancy in the office of county clerk could not be filled by placing the names of candidates on the Presidential Primary ballot.

We further held, however, that the Legislature, acting pursuant to Article VII, Section 5, and Article IV, was privileged to provide for "a special election on May 6, 1980, conducted simultaneously, but independently of the primaries." In *McPherson*, we were dealing with the county clerk and there is no statute providing for a special election to that office.

Here, we have a specific statute dealing with vacancies in the county legislative body. It is our duty in construing any statute to start with a presumption of its constitutionality and treat it as being within the legislative power. *State ex rel. Turner v. Wilson*, 196 Tenn. 152, 264 S.W.2d 796 (1954). Any doubt must be resolved in favor of its constitutionality. *Williams v. Cothron*, 199 Tenn. 618, 288 S.W.2d 698 (1956). It is our duty to adopt a construc-

---

3. Section 5–502(b) reads as follows:

(b) Whenever a vacancy occurs in the office of a member of the county legislative body, the remaining members of the county legislative body shall fill the vacancy by the election of a qualified person to serve until the office is filled at the next general election, primary election or referendum in the county or general election, primary, or referendum in a municipality in the county if such municipality includes all or part of the district seat to be filled by election in the county occurring seventy-five (75) or more days after the vacancy occurs. If the vacancy occurs within seventy-five (75) days before a general election in the county, the person elected by the county legislative body shall serve until the vacancy is filled at the next succeeding general election. A person elected to fill the vacancy at a general election shall serve for the remainder of the unexpired term. Provided, however, that in no event shall a person appointed to a vacancy under the provisions of chapters 1, 5 and 6 of this title serve for a period of time exceeding two (2) years.

tion which will sustain the statute and avoid constitutional conflict, if its recitations permit such a construction. The cardinal rule, of course, is that we endeavor to ascertain and give effect to the intent of the Legislature.

We view the statute in the light of the substantial innovations made in county government by the recent constitutional amendment and the implemental legislative enactment taken in its totality. We believe the overriding legislative purpose was to provide a mechanism for the selection of successor county commissioners designed, on the one hand, to ensure that the people had continuing representation, and on the other, to give maximum opportunity for the public to exercise its choice. Hence, the remaining members of the legislative body name a temporary successor and the people fill the vacancy on the date of a primary or the date of a referendum election.

The members of the Legislature are politically knowledgeable and we cannot believe they intended to elect officials in a primary election wherein party nominees are chosen or in a referendum or on the ballot used at either such election. What the Legislature obviously intended was that on the date of these elections, when voter-turnout will be enhanced, a special election will be held to fill vacancies on the county commission. We note that the compulsory Presidential Primary and the optional party primary both occur on May 6, 1980 (the first Tuesday in May).

 We recognize that the May primary is not compulsory and is not utilized in many counties of the State. In those counties the next general election, as a rule, will be the first opportunity for the people to fill a vacancy. This, however, does not defeat the scheme.

The Legislature, in the consideration of the implemental legislation, was faced with a task of gigantic proportions and was working within the framework of an inadequate time schedule. As a result of this it will no doubt wish to reconsider this particular section in connection with a comprehensive statute dealing with vacancies. In the meantime, we uphold this statute, at least on a transitional basis.

The legislative body of Marion County is privileged to fill these vacancies pending a final election by the people at a special election to be held on May 6, 1980, the date of the county primary. The person so elected shall serve until the August 1980 general election at which time a successor will be selected to serve for the remainder of the term expiring August 31, 1982.

 This awkward result is prompted by the language of the section specifying that "[a] person elected to fill the vacancy at a *general* election shall serve for the remainder of the unexpired term." (Emphasis supplied.) It is implicit in this provision that those selected at a special election will only serve until the next regular election. This section is in need of substantial revision. Our construction preserves the statute and hopefully arrives at the correct legislative intent; however the result we reach is far from satisfactory.

## IV.

### Juvenile-Probate Judge

In view of the holding of this Court in *Waters v. Schmutzer*, 583 S.W.2d 756 (Tenn. 1979), coupled with the resignation of the county judge, Marion County has no county officer to hold the juvenile and probate courts.

The Chancellor ordered that the county legislative body "elect a qualified person to perform the judicial functions formerly exercised by the County Judge" and that the person so selected be designated Juvenile-Probate Judge or such other appropriate title as might be fixed by the legislative body. Thereafter, the "office" would be filled by the people at the August 1980 election to hold office until September 1, 1982.

A juvenile court judge is a county officer, and Article VII, Section 2, authorizes the county legislative body to fill vacancies. *See Waters, supra.* As we pointed out in *Waters*, Sections 37–201, T.C.A., *et seq.*, cre-

ate the juvenile court and provide that the judge shall be the county judge or chairman in all counties except in those counties where juvenile courts are especially provided by statute. Section 37–202(8), T.C.A.

We have no specific statute of like import dealing with the probate court; however, our statutes make it clear that the county court is the probate court. *See, e. g.,* Section 32–201, T.C.A., relating to the place of proving and recording wills. *See also* Section 16–701, T.C.A., which recites that "[a] court is established in each county for the dispatch of probate and other business intrusted to it, to be called the county court." The 1978 Constitutional Amendments superseded this court. We know judicially that the probate duties in many counties have been transferred to the general sessions court; that there are separate probate courts and that various private acts govern probate jurisdictions. Viewed realistically the probate court is just as much a part of our judicial system as the juvenile court. Probate judges too are county officers.

Actually, there is not a vacancy in the office of probate judge as much as there is a void. Marion County has no judge of probate. We think there is little doubt that the juvenile judge elected as aforesaid could sit as probate judge. What he is called is of no consequence.

 We hold, during this period of transition, pending the passage by the Legislature of the proposed measure designed to restructure the trial courts of the State, which places probate jurisdiction in the chancery court, or pending some other legislative solution, there is no constitutional impediment to the selection of a juvenile and probate judge in the manner proposed in Marion County. We, therefore, affirm the Chancellor in this respect.

4. Under Article XI, Section 17 of the Constitution of Tennessee, "[n]o County office created by the Legislature shall be filled otherwise than by the people or the County Court." A member of the school board is a county officer. *Southern v. Beeler*, 183 Tenn. 272, 195 S.W.2d 857 (1946).

## V.

### Vacancies—County Board of Education

The county legislative body, acting pursuant to Section 49–213, T.C.A., filled two vacancies on the county school board to unexpired terms extending beyond the 1980 elections.

The Chancellor held that the unexpired term of a member on the county board of education should be filled at the next regular meeting of the county legislative body and that the member so elected should serve until the next August election. Further, he declared Section 49–213, T.C.A., to be unconstitutional as being in conflict with Article VII, Section 5 of the Constitution.

 Section 49–213, T.C.A., provides, in part, that vacancies "shall be filled at the next regular meeting of the quarterly county court or at a special meeting of the court." [4] The power to fill vacancies now resides in the county legislative body, vice the non-existent quarterly county court.[5] We disagree with the Chancellor's conclusion, in this regard, and uphold the statute. We affirm so much of the Chancellor's decision as provides that the county legislative body fill the vacancy pending the August election. This is the clear mandate of Article VII, Section 2. We hold Section 49–213, T.C.A., to be constitutional to the extent of the temporary appointment to the vacancy. Thereafter, a successor is named at the August election.

## VI.

### Conclusion

Marion County may conduct its schedule county primary on May 6, 1980 for the purposes of nominating county officers. As to these the May 6, 1980 election is special in character and general in results.

5. Under Chapter 4, Private Acts of 1975, School Board Members in Marion County are elected by the people; however, vacancies are filled by the legislative body under Section 49–213, T.C.A., and Article VII, Section 2 of the Constitution.

FONES and HARBISON, JJ., fully concur.

BROCK, C. J., and COOPER, J., would hold Sec. 5–502(b), T.C.A., to be unconstitutionally vague.