Morton NICHOLS and Larry Thurston and wife, Brenda Thurston, Individually, and as representatives of a class identified in Exhibit I, Plaintiffs-Appellants,

v.

TULLAHOMA OPEN DOOR, INC., and William M. Leech, Jr., as Attorney General of the State of Tennessee, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

May 25, 1982.

Application for Permission to Appeal Denied by Supreme Court Oct. 4, 1982.

James H. Henry, II, Henry & McCord, Tullahoma, for plaintiffs-appellants.

William C. Rieder, Haynes, Hull, Smoot & Rieder, P.A., Tullahoma, for defendant-appellee Tullahoma Open Door, Inc.

William M. Leech, Jr., Atty. Gen., Lee Breckenridge, Asst. Atty. Gen., Nashville, for defendant-appellee Atty. Gen. of State of Tenn.

## OPINION

LEWIS, Judge.

The primary issue raised by this appeal is whether T.C.A. §§ 13–24–101—13–24–104

violate certain provisions of the Constitutions of Tennessee and the United States. A secondary issue is whether the Sherrill Living Center, a group home for mentally retarded persons operated by defendant Tullahoma Open Door, Inc., is operated on a commercial basis and, therefore, not entitled to the benefits prescribed by T.C.A. §§ 13–24–101—13–24–104.

This case was commenced by plaintiffs seeking a declaratory judgment declaring the statutes at issue unconstitutional. Plaintiffs also sought a permanent injunction prohibiting defendant from operating a group home within an area zoned R–1, low density residential, in Tullahoma, Tennessee.

Plaintiffs are residents of Rolling Acres Subdivision in Tullahoma, an area zoned as R–1, low density residential. The Sherrill Living Center, located in the Rolling Acres Subdivision, is a group home intended to house up to eight unrelated mentally handicapped or physically handicapped persons with up to two houseparents or guardians, who are unrelated to the handicapped persons. The home has the appearance and design of a single-family home. Its construction and operation have been financially supported through cooperative arrangements with the defendant, the Tennessee Department of Mental Health and Mental Retardation, the Tennessee Housing Development and the United States Department of Housing and Urban Development.

The specific uses permitted by the zoning ordinance in Tullahoma in an R–1, low density residential district, include single-family dwellings, churches, hospitals, nursing homes, government buildings, schools, and utility stations. The term "family" is defined in the ordinance as "one or more persons occupying a single dwelling unit, provided that unless all members are related by blood or marriage, no such family shall contain over five (5) persons ...."

The Sherrill Living Center would not come within the uses permitted by the terms of the Tullahoma Zoning Ordinance in an R–1 district, except for the provisions of T.C.A. § 13–24–102, which provides:

*Home in which mentally retarded, mentally handicapped or physically handicapped persons reside classified as single family residence.*—For the purposes of any zoning law in Tennessee, the classification single family residence shall include any home in which eight (8) or fewer unrelated mentally retarded, mentally handicapped or physically handicapped persons reside, and may include two (2) additional persons acting as houseparents or guardians who need not be related to each other or to any of the mentally retarded, mentally handicapped or physically handicapped persons residing in the home.

T.C.A. § 13–24–103 provides that the provisions of T.C.A. § 13–24–102 take precedence over any local zoning law or ordinance to the contrary.

The Chancellor held that T.C.A. §§ 13–24–101—13–24–104 do not violate either the Tennessee or the United States Constitution. He further found that Tullahoma Open Door, Inc., was not operating the Sherrill Living Center on a commercial basis, thus entitling it to the benefits of the statutes.

Plaintiffs, by their first issue, insist that T.C.A. §§ 13–24–101—13–24–104 fail to comply with Article 2, Section 17 of the Tennessee Constitution which provides: "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

It is plaintiffs' contention that the body of the act is broader than its caption in that the caption of Chapter 863, Public Acts of 1978, later codified as T.C.A. §§ 13–24–101—13–24–104, reads: "An act to provide that physically handicapped and mentally retarded persons shall not be excluded from living in normal residential surroundings by any zoning law in Tennessee." Plaintiffs argue that the scope of Chapter 863 is not limited to its title, that is, providing that physically handicapped and mentally retarded citizens shall not be precluded from living in normal residential surroundings. They argue that if the scope is to fall

within the caption, then the implication is that only R–1, low density residential, is "normal," with R–2 and R–3 being abnormal. (In Tullahoma, both R–2 and R–3 zoning districts allow the use of multi-family dwellings.) Plaintiffs insist that there is no proof that restricting group homes, such as the Sherrill Living Center, to R–2, R–3, or R–4 zoning districts would preclude handicapped persons from living in normal residential surroundings.

■ Plaintiffs concede that the well-established rule in this jurisdiction is that if an act has been reenacted as codified, then the subsequent legislation supersedes the earlier and the breadth of the initial caption becomes moot. As our Supreme Court noted in *Pace v. State*, 566 S.W.2d 861, 864 (Tenn.1978):

> As to the holding that the caption of the amending act was defective under the requirements of Article II, Section 17 of the Constitution of Tennessee, it is fundamental that defects in the caption of the amendatory act, if any, were cured through subsequent action of the legislature codifying the amendment.

The Court, in *Harmon v. Angus R. Jessup Associates, Inc.*, 619 S.W.2d 522 (Tenn.1981), reiterated the rule:

> We do not deem it necessary to analyze the caption of the statute as originally enacted, because the statute was reenacted in its entirety as a part of Tennessee Code Annotated. It is well settled in this state that the subsequent reenactment and codification of the statutes eliminated any question concerning the original caption.

*Id.* at 523. Plaintiffs, however, would challenge the soundness of this rule and urge that if the act is void because the body is broader than the caption, then codification cannot cure the defect. They argue that T.C.A. § 1–1–108(a), providing that the code commission "shall not alter the sense, meaning, or effect of an act of the general assembly, but shall copy the exact language of the text of the statutes, codes and sessions laws" should make it impossible for the commission to alter the effect of a void act and make it effective upon codification.

■ This argument must be made to our Supreme Court and not to this Court. We are bound to follow the law as enunciated by our Supreme Court. *Richardson v. Johnson*, 60 Tenn.App. 129, 444 S.W.2d 708 (1969). We, therefore, hold that any analysis of the caption and body of the act as originally enacted is unnecessary because the subsequent codification cured any defect that might have existed. The statutes in question are therefore not invalid under Article 2, Section 17 of the Constitution of Tennessee.

Plaintiffs next contend that these statutes violate Article 1, Section 8 of the Constitution of Tennessee and the Fifth and Fourteenth Amendments to the Constitution of the United States by arbitrarily and capriciously taking or impairing their property rights. We are of the opinion that this contention is without merit.

■ In order to show that a statute violates due process, plaintiffs must demonstrate that the statute takes away "life, liberty, or property." *Craft v. Memphis Light, Gas & Water Division*, 534 F.2d 684 (6th Cir., 1976), aff'd 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). The principles of due process under Article 1, Section 8 of the Tennessee Constitution are identical to those under the United States Constitution. *State ex rel. Anglin v. Mitchell*, 596 S.W.2d 779 (Tenn.1980); *Dearborne v. State*, 575 S.W.2d 259 (Tenn.1978). Any prerequisites necessary to prove a due process violation under the United States Constitution would, therefore, be applicable to proving a violation of Article 1, Section 8 of the Tennessee Constitution.

■ We are of the opinion that no taking of property is involved in the present case because plaintiffs can claim no constitutionally recognized property right to maintain the zoning restrictions which previously barred group homes from their neighborhood. The law is well settled that zoning restrictions do not create such vested rights, even where a lifting of the restrictions will cause a diminution of property

values. In *Reichelderfer v. Quinn,* 287 U.S. 315, 53 S.Ct. 177, 77 L.Ed. 331 (1932), an act of Congress changed the use of a park and overruled zoning restrictions of the District of Columbia by directing the construction of a fire house. Finding that no constitutional violation had occurred, the United States Supreme Court noted at 287 U.S. at 318–319, 53 S.Ct. at 178–179:

> It is true that the mere presence of the park may have conferred a special benefit on neighboring owners and enhanced the value of their property. But the existence of value alone does not generate interests protected by the Constitution against diminution by the government, however unreasonable its action may be. The beneficial use and hence the value of abutting property is decreased when a public street or canal is closed or obstructed by public authority, . . .; or a street grade is raised, . . ., or the location of a county seat, . . . or of a railroad changed, . . . But in such cases no private right is infringed.

In the present case the statute does not restrict the use of plaintiffs' property. It merely lifts restrictions which were previously imposed by local ordinance and permits others to use their property for a broader range of purposes than the zoning ordinance of the City of Tullahoma would allow. Under these circumstances, no constitutionally protected property right is violated.

■ We are further of the opinion that the statutes in question should be upheld against the due process challenge as a reasonable exercise of the legislature's power to address the integration of mentally and physically handicapped persons into society.

■ The police powers of the legislature include the power to restrict the use of private property and to cause diminution of its value so long as the legislative measures are reasonably related to protecting the public health, safety, comfort, welfare and morals.

> [T]he legislature may impose any limitation upon the use of property which it may deem necessary or expedient to promote and protect the safety, health, morals, comfort and welfare of the people, provided only that this power shall not be exercised arbitrarily; that is, without reasonable connection or relation between the limitation imposed and the public safety, health, or welfare, etc.

*Spencer-Sturla Co. v. City of Memphis,* 155 Tenn. 70, 83, 290 S.W. 608, 612 (1927).

■ In reviewing an exercise of the state police power for compliance with the principles of due process, the proper role of the judiciary is not to second guess the legislature as to the wisdom of its policies.

■ "In determining whether such act is reasonable the courts decide merely whether it has any real tendency to carry into effect the purposes designed, that is, the protection of the public safety, the public health, or the public morals." *State ex rel. Loser v. National Optical Stores Co.,* 189 Tenn. 433, 446, 225 S.W.2d 263, 269 (1949). The role of the court is to determine whether the legislation is so unconnected to its purpose as to constitute a manifest abuse of discretion. *Pack v. Southern Bell Telephone & Telegraph Co.,* 215 Tenn. 503, 513, 387 S.W.2d 789, 793 (1965).

The purpose of the legislation under attack is stated in T.C.A. § 13–24–101 and that is to "remove any zoning obstacles which prevent mentally retarded, mentally handicapped or physically handicapped persons from living in normal residential surroundings." There is evidence in the record that these statutes address one aspect of a broader state-wide program to deinstitutionalize mentally and physically handicapped persons and to integrate them into society to the greatest degree possible consistent with their abilities.

The legislation under attack opens up residential neighborhoods to family-like groups of handicapped persons and houseparents allowing them to live in areas where zoning laws would otherwise prevent them from living.

Decisions in a number of states have upheld similar legislation in the face of constitutional challenges, holding that the legislature furthered important public policies and validly preempted local ordinances to the contrary. *See Thelen v. City of Missoula,* 168 Mont. 375, 543 P.2d 173 (1975); *City of Los Angeles v. California Department of Health,* 63 Cal.App.3d 473, 133 Cal.Rptr. 771 (1976); *Costley v. Caromin House, Inc.,* 313 N.W.2d 21 (Minn.1981); *Region 10 Client Management, Inc. v. Town of Hampstead,* 120 N.H. 885, 424 A.2d 207 (1980); *Berger v. State,* 71 N.J. 206, 364 A.2d 993 (1976); *State ex rel. Ellis v. Liddle,* 520 S.W.2d 644 (Mo.App.1975); *Abbott House v. Village of Tarrytown,* 34 App.Div.2d 821, 312 N.Y.S.2d 841 (1970).

▆▆▆▆ Plaintiffs, as a part of their due process argument, contend that the legislature is improperly "usurping" local zoning powers. We reject this contention, however, for the reason that municipalities in Tennessee have no authority other than that granted by the legislature and the legislature may remove or alter that authority as it chooses. "[I]t is elementary that statutes prescribing how delegated police power may be exercised by municipalities are mandatory and exclusive." *Brooks v. Garner,* 566 S.W.2d 531, 532 (Tenn.1978). Municipal authorities cannot adopt ordinances which infringe the spirit of state law or are repugnant to the general policy of the state. *Capitol News Co. v. Metropolitan Government of Nashville and Davidson County,* 562 S.W.2d 430, 434 (Tenn.1978).

Plaintiffs cite *Garcia v. Siffrin Residential Association,* 63 Ohio St.2d 259, 407 N.E.2d 1369 (1980), *cert. denied,* 450 U.S. 911, 101 S.Ct. 1349, 67 L.Ed.2d 334 (1981), as an example of a jurisdiction wherein the court ruled that a statute, similar to the ones at issue here, unreasonably limited enforcement by municipalities of the police power of zoning. This case is readily distinguishable. Section 3, Article XVIII, of the Ohio Constitution specifically grants to municipalities certain police powers. There is, therefore, specific constitutional authority for municipal zoning ordinances apart from

authority granted by the legislature in Ohio. The unconstitutionality of the Ohio statute was premised on the fact that it encroached the police powers authorized by the state constitution and not upon municipal powers authorized by the legislature.

We are of the opinion that the statutes in question do not impair the plaintiffs' property rights and, further, that the statutes are a valid exercise of the police power of the State. Plaintiffs' contention with respect to this issue is without merit.

Plaintiffs' third contention is that T.C.A. §§ 13–24–101—13–24–104 fail to comply with the principles of equal protection under Article 1, Section 8 of the Constitution of Tennessee and the Fourteenth Amendment of the Constitution of the United States by granting benefits to the physically and mentally handicapped which are not granted to other persons.

▆▆▆▆ At the outset of our consideration of this argument, it is important to note that the state and federal constitutions impose identical equal protection requirements. *Marion County, Tennessee River Transportation Co. v. Stokes,* 173 Tenn. 347, 117 S.W.2d 740 (1938). Under both provisions, the legislature has the power to draw distinctions and to treat different groups of persons differently as long as the classification is not purely arbitrary and without any reasonable basis. *Mascari v. International Brotherhood of Teamsters,* 187 Tenn. 345, 215 S.W.2d 779 (1948).

▆▆▆ The statutes in question here are clearly founded on a reasonable and legitimate legislative policy. They recognize that the mentally and physically handicapped are disadvantaged with respect to living in family-like settings and the statutes, therefore, take steps to remove obstacles which presently hinder the integration of handicapped persons into society. The classification therefore has a reasonable basis and does not operate arbitrarily.

T.C.A. §§ 13–24–101—13–24–104 are not violative of Article 1, Section 8 of the Tennessee Constitution and the Fourteenth Amendment to the United States Constitution.

Plaintiffs' constitutional arguments are without merit.

Plaintiffs' last issue is that the Sherrill Living Center is operating on a commercial basis and is, therefore, not entitled to the protection of provisions of T.C.A. §§ 13–24–101—13–24–104. T.C.A. § 13–24–104 provides: *"Inapplicability to commercial residences for handicapped persons.—*This chapter shall not apply to such family residences wherein handicapped persons reside when such residences are operated on a commercial basis."

Defendant, which operates the Sherrill Living Center, is a nonprofit, tax exempt charitable corporation according to the provisions of its charter. No board member of defendant has ever received any compensation. The construction of the group home was financed under a program which the Tennessee Housing Development Agency has in conjunction with the Department of Mental Health and Mental Retardation. A loan is made from the Tennessee Housing Development Agency to be repaid primarily by subsidy payments defendant receives from the United States Department of Housing and Urban Development. The subsidy payments comprise about seventy-five percent of the mortgage payments. The other twenty-five percent of the mortgage payments is primarily tied to and received from the residents' supplemental social security income.

Defendant entered into a contract with the Department of Mental Health and Mental Retardation wherein it provides services and housing to certain mentally retarded adults pursuant to the Department's policy of deinstitutionalization for a set rate per individual per month. The monies received from the Department are used to pay the salaries of houseparents, special trainees if needed, and any expenses required to operate the facility with the exception of room and board.

We are of the opinion that such an arrangement does not constitute operating on a commercial basis. This arrangement does not comport with a natural and ordinary meaning of the word "commer-cial." In constructing statutory language, it is necessary to look to the natural and ordinary meaning of words. *Metropolitan Government of Nashville and Davidson County v. Motel Systems, Inc.,* 525 S.W.2d 840 (Tenn.1975).

Furthermore, it is a fundamental rule of statutory construction that the court must construe the statutes so as to give the legislative intent and purpose. *Marion County Board of Commissioners v. Marion County Election Commission,* 594 S.W.2d 681 (Tenn.1980). The purpose of the legislation before us, as discussed previously, is to remove barriers to the deinstitutionalization of mentally and physically handicapped persons in society. We are of the opinion that in carrying out this purpose, the statutory scheme did not seek to exclude a group home not operating for profit, such as the Sherrill Living Center, on the basis that it was operating as a commercial business simply because defendant received subsidies and rent to repay the mortgage loan and to pay staff members. No commercial purpose for the group home has been shown and we are of the opinion that the home is not operating on a commercial basis.

We find the issues advanced by plaintiffs to be without merit. The judgment of the Chancellor is affirmed with costs to plaintiffs and the cause remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

We would be remiss if we did not commend all counsel in this cause for the excellently written and thoroughly researched briefs and their outstanding oral arguments.

CANTRELL and CONNER, JJ., concur.