# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 26, 2016 Session

## STATE OF TENNESSEE v. EDWARD ALLEN CARTER

### Appeal from the Criminal Court for Knox County
### No. 100540    Steven W. Sword, Judge

---

### No. E2015-01212-CCA-R3-CD – Filed August 8, 2016

---

The defendant, Edward Allen Carter, pleaded guilty to possession of cocaine with intent to sell within a drug-free zone, possession of a firearm during the commission of a dangerous felony, unlawful possession of a firearm, possession of an item with a defaced serial number, evading arrest, and driving on a suspended license, and he reserved certified questions of law relative to the validity of the city ordinance that formed the basis of the traffic stop which led to his arrest. Because the certified questions are overbroad and fail to meet specificity requirements, the appeal is dismissed.

## Tenn. R. App. P. 3; Appeal Dismissed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Joshua Hedrick, Knoxville, Tennessee, for the appellant, Edward Allen Carter.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Charme Allen, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Knox County Grand Jury charged the defendant with alternative counts of the sale and delivery of cocaine within 1,000 feet of a school; alternative counts of the sale and delivery of cocaine within 1,000 feet of a public park; possession of a firearm during the commission of a dangerous felony; five counts of being a felon in possession of a firearm; possession of an item with a defaced serial number; two counts of felony evading arrest; two counts of misdemeanor evading arrest; and one count of driving on a suspended license. On May 6, 2013, the defendant filed a motion to dismiss, in which he

sought suppression of the evidence seized as a result of his traffic stop. The trial court conducted a suppression hearing on May 24, 2013.

The proof at the hearing established that Knoxville Police Department ("KPD") Officer Brian Headrick responded to a call of a drive-by shooting on Washington Avenue late in the evening of December 2, 2011. Officer Headrick encountered a witness, who informed him that two vehicles "pulled up facing each other, and an eruption of gunfire came from both vehicles, and a . . . black male fled on foot south towards Magnolia Avenue." Both vehicles then left the scene. The witness described one vehicle as a "dark-colored sedan" and the other as "a white Dodge pickup truck." The witness also recalled that the driver of the pickup truck was a white male "wearing a ball cap and a light-colored shirt."

Officer Headrick began patrolling the area, and approximately two hours later, he spotted a white Dodge pickup truck in the parking lot of the Regency Motel. Officer Headrick parked nearby to watch the truck, which appeared to be unoccupied, and he observed a dark-colored Saturn vehicle pull into the motel's parking lot and park next to the truck. The driver of the Saturn ascended a flight of stairs at the motel and walked to a dark corner of the motel walkway where "a lot of drug transactions take place." Officer Headrick saw the driver briefly interact with another individual and then return to the Saturn and leave the parking lot.

Believing that the driver of the white pickup truck had perhaps seen the police cruiser and managed to secrete himself in the Saturn vehicle, Officer Headrick contacted KPD Officer James Wilson via police radio and informed him that the Saturn was headed in his direction. Shortly thereafter, the Saturn passed Officer Wilson. He drove behind the Saturn and immediately noticed that his license plate light ("tag light") was not operational. Based solely on the lack of an operational tag light, Officer Wilson activated his vehicle's emergency lights, and the driver of the Saturn pulled to the side of the road and stopped.

Officer Wilson approached the vehicle and discovered that the defendant was the driver. Officer Headrick arrived a few moments later. Because the defendant was unable to provide his driver's license, Officer Wilson returned to his patrol car to conduct a search of the driver's license database while Officer Headrick remained by the defendant's vehicle. According to Officer Headrick, the defendant, who appeared to be quite nervous and was fidgeting with a cigarette package, reached under the passenger seat of his vehicle and produced a "silver handgun." When Officer Headrick attempted to open the passenger-side door of the vehicle, the defendant dropped the gun, started the engine, and drove away. Both Officer Wilson and Officer Headrick pursued the defendant in their respective patrol cars.

During the pursuit, Officer Wilson observed the defendant throw an object through the window of the driver's side of the vehicle. Officer Wilson returned to the area after the pursuit had ended and located a cigarette package which contained crack cocaine.

After chasing the defendant for nearly three miles, the defendant drove into a field, abandoned his car, and began to run. Officer Wilson's police dog caught the defendant a few hundred yards from the abandoned vehicle. During a search of the defendant's vehicle, officers recovered a handgun located beneath the driver's seat.

The trial court denied the defendant's motion to suppress, concluding that the defendant violated the Knoxville City Ordinance which requires drivers to have working tag lights and that KPD officers were therefore justified in stopping the defendant's vehicle. The court further found the city ordinance at issue did not conflict with state law.

Following the trial court's denial of the motion to suppress, the defendant pleaded guilty to possession of 0.5 grams or more of cocaine with the intent to sell within 1,000 feet of a school, possession of a firearm during the commission of a dangerous felony, two counts of being a felon in possession of a firearm, possession of an item with a defaced serial number, one count of felony evading arrest, one count of misdemeanor evading arrest, and driving on a suspended license. The remaining charges were dismissed, and the trial court imposed an effective sentence of 23 years' incarceration. The defendant also reserved, with the consent of the State and the trial court, three certified questions of law which the parties and the court agreed were dispositive of the case:

a. Whether Knoxville City Ordinance § 17-379, to the extent that it requires a vehicle to have a license plate light, is unconstitutional on the grounds that the local municipality did not have the authority to regulate vehicle equipment and that this ordinance is in conflict with other state law.

b. Whether Knoxville City Ordinance § 17-379 is in conflict with T.C.A. §§ 55-9-402 and 55-9-404.

c. Whether the seizure of the defendant was reasonable given the officer's reliance on Knoxville City Ordinance Sec. 17-379 in initiating a traffic stop.

Before addressing these questions, we acknowledge some principles of appellate review of a case of this type.

When reviewing a trial court's findings of fact and conclusions of law on a motion to suppress evidence, we are guided by the standard of review set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. When the trial court does not set forth its findings of fact upon the record of the proceedings, however, the appellate court must decide where the preponderance of the evidence lies. *Fields v. State*, 40 S.W.3d 450, 457 n.5 (Tenn. 2001). As in all cases on appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). We review the trial court's conclusions of law under a de novo standard without according any presumption of correctness to those conclusions. *See*, *e.g.*, *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999).

Because stopping an automobile without a warrant and detaining its occupants unquestionably constitutes a seizure, *Delaware v. Prouse*, 440 U.S. 648, 653 (1979), the State in the present situation had the burden of demonstrating the applicability of an exception to the warrant requirement, *see, e.g.*, *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005) (temporary detention of an individual during a traffic stop constitutes seizure that implicates the protection of both the state and federal constitutions); *Keith*, 978 S.W.2d at 865. The authority of a police officer to stop a citizen's vehicle is circumscribed by constitutional constraints. Police officers are constitutionally permitted to conduct a brief investigatory stop supported by specific and articulable facts leading to a reasonable suspicion that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 20-23 (1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000).

On appeal, the defendant contends that the Knoxville City Ordinance on which KPD officers relied when initiating his traffic stop is unconstitutional due to its conflict with state law and that the officers' reliance on the ordinance as justification for the stop was unreasonable. The State counters that the applicable city ordinance does not conflict with state law and is accordingly constitutional and that, in any event, the stop was reasonable.

The city ordinance at issue, titled "Lights on motor vehicles," states, in pertinent part, as follows:

- 4 -

No person shall operate a motor vehicle on the public streets of the city or property owned by or leased to the city's community development corporation unless such vehicle is equipped with an operating lamp or lamps so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from fifty (50) feet to the rear. Any such lamp or lamps shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted. This subsection shall not apply to any motor vehicle assembled or manufactured prior to January 1, 1968.

Knoxville, TN, City Ordinance § 17-379(b)(4). The comments that follow this section state, "*State Law reference* – Similar provisions, T.C.A. § 55-9-402."

Tennessee Code Annotated section 55-9-402, governing "Lights required on motor vehicles" and included in the chapter entitled "Equipment – Lighting Regulations," addresses headlights and tail lamps but makes no mention of tag lights. *See generally* T.C.A. § 55-9-402. The only state statute to address tag lights is section 55-9-404, which provides that the vehicle or trailer "at the end of a train of vehicles" must be equipped with a tag light, and it specifically states that "[t]his section shall not apply to a single motor vehicle as is required in § 55-9-402." *Id.* § 55-9-404(a)-(b).

Importantly, Tennessee Code Annotated section 55-10-307(a) provides as follows:

Any incorporated municipality may by ordinance adopt, by reference, any of the appropriate provisions of Chapter 8 of this title, §§ 55-10-101 – 55-10-310, 55-12-139, 55-50-301, 55-50-302, 55-50-304, 55-50-305, 55-50-311, and 55-10-312, and may by ordinance provide additional regulations for the operation of vehicles within the municipality, which shall not be in conflict with the provisions of the listed sections. . . .

*Id.* § 55-10-307(a).

## I. Certified Questions

We now turn to the questions presented.

   a. Whether Knoxville City Ordinance § 17-379, to the extent that it requires a vehicle to have a license plate

light, is unconstitutional on the grounds that the local municipality did not have the authority to regulate vehicle equipment and that this ordinance is in conflict with other state law.

This question posits that a conflict exists between ordinance section 17-379(b)(4) and state statutes regulating the equipping of motor vehicles, and the question postulates that some provision in a constitution is the mechanism for invalidating the city ordinance that conflicts with state statutes. The formulation is, therefore, inadequate as a certified question.

Pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A), which authorizes an appeal of a certified question, the appellant must express "a statement of the certified question of law" and must identify "clearly the scope and limits of the legal issue reserved." Tenn. R. Crim. P. 37(b)(2)(A)(i), (ii). Mere "substantial compliance" with these and other requirements is insufficient to result in appellate review. *State v. Armstrong*, 126 S.W.3d 908, 912 (Tenn. 2003); *State v. Pendergrass*, 937 S.W.2d 834, 836-37 (Tenn. 1996). "[W]here questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law." *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). "This court has previously required certified questions of law to be narrowly framed." *State v. Tobias Toby Horton*, No. W2008-01170-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Jackson, Aug. 13, 2009) (holding that the wording of a certified question was overly broad).

The claim that an unnamed provision of an unnamed constitution invalidates the city ordinance in this case is obviously overbroad. On that basis alone, we will not further review the first question presented.

> b. Whether Knoxville City Ordinance § 17-379 is in conflict with T.C.A. §§ 55-9-402 and 55-9-404.

This question asserts that a "conflict" exists between state law and the city ordinance. The question cites to the conflicting provisions of the municipal and state enactments; however, we note that the question does not cite to any legal mechanism that operates to invalidate the city ordinance, nor does it explain how a resulting invalidation leads to suppression of evidence.

At this juncture, we have given thought to the nature of such a legal mechanism and believe that either of two lines of legal theory may provide the

mechanism. To explore the first line, we mention that we have determined that the defendant failed to cite to a constitutional provision in his first question or in his brief because no such provision exists. Yet, "[m]unicipal ordinances in conflict with and repugnant to a State law of a general character and state-wide application are universally held to be invalid." *Southern Ry. Co. v. City of Knoxville*, 442 S.W.2d 619, 622 (Tenn. 1968). Other opinions make similar pronouncements, but none cite to a precedential basis for saying so. *See, e.g.*, *Nichols v. Tullahoma Open Door, Inc.*, 640 S.W.2d 13 (Tenn. Ct. App. 1982) ("Municipal authorities cannot adopt ordinances which infringe the spirit of state law or are repugnant to the general policy of the state." (citing *Capitol News Co. v. Metro. Gov't of Nashville & Davidson Cnty*, 562 S.W.2d 430, 434 (Tenn. 1978)); *B.F. Nashville, Inc. v. City of Franklin*, No. M2003-00180-COA-R3-CV (Tenn. Ct. App., Jan. 21, 2005) (stating that when "a statute and an ordinance are in irreconcilable conflict . . . the ordinance must give way to the imperatives of the statute." (citing *Manning v. City of Lebanon*, 124 S.W.3d 562, 565 (Tenn. Ct. App. 2003)). This line of cases establishes *ipso facto* a common law basis for invalidating a city ordinance on the basis of conflict.

The second line of legal theory may be provided by a state statute that itself invalidates a city ordinance that conflicts with a given state statute. Counties and municipalities are political subdivisions – subordinate functionaries – of state government. Obviously, the power is reposed in the state legislative branch to limit the authority of a county or municipality to encroach upon the authority of the state as expressed in its duly enacted statutes. Thus, provisions such as Tennessee Code Annotated section 55-10-307(a), which forbids a municipality from enacting ordinances that are in conflict with named state statutes, logically serve as mechanisms for invalidating any such conflicting ordinances.

We cannot discern from the formulation of the second question which, if either, of the theories operating to invalidate the city ordinance the defendant has in mind. Furthermore, the question states only that a conflict exists and does not aver that the ordinance is repugnant to the statute or that the conflict is irreconcilable.

Even if we were willing to believe that the defendant in his second question somehow theorized the *invalidation* of the city ordinance, as opposed to its mere "conflict" with the statutes, the question does not express how or why that circumstance would lead to suppression of the evidence of the crimes. Indeed, the question does not even state that the claimed conflict does result in suppression.

For these reasons, we reject the second question because it is an improper and overbroad formulation of a Rule 37 certified question.

c. Whether the seizure of the defendant was reasonable given the officer's reliance on Knoxville City Ordinance Sec. 17-379 in initiating a traffic stop.

Although our decision pretermits this question, we will address the reasonableness of the stop in the interest of completeness. The State urges this court to consider the federal "good faith exception," which permits the use of evidence obtained pursuant to reliance on a law that was later declared unconstitutional. *See generally Davis v. United States*, 564 U.S. 229, 240-41 (2011); *Illinois v. Krull*, 480 U.S. 340, 349-50 (1987). At this time, Tennessee has not adopted the good faith exception. *See State v. Carter*, 16 S.W.3d 762, 770 n.8 (Tenn. 2000). Unless and until our supreme court adopts this exception, it is not a feature of Tennessee law, and we are "without the authority to create a good faith exception." *State v. Jerry Brandon Phifer*, No. M2013-01401-CCA-R3-CD, slip op. at 22 (Tenn. Crim. App., Nashville, Sept. 23, 2014).

## *II. Conclusion*

Based upon the foregoing analysis, we dismiss the appeal.[1]
`

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[1] The underlying judgments correctly reflect that the defendant was convicted of cocaine possession, possession of a firearm during the commission of a dangerous felony, felony evading arrest, misdemeanor evading arrest, driving on a suspended license, and one count of unlawful possession of a firearm; however, no judgment exists for the conviction of possession of an item with a defaced serial number, and the judgments erroneously reflect a conviction for unlawful possession in count nine instead of count seven. The law is well-settled that a trial court speaks through its minutes, *see, e.g.*, *In re Adoption of Gillis*, 543 S.W.2d 846, 847 (Tenn. 1976), and the transcript of the guilty-plea submission hearing clearly reflects that the defendant was pleading guilty to *eight* offenses and plainly sets forth the exact counts and nature of the charges to which he was pleading. We merely acknowledge this anomaly in the record but take no action relative thereto because we lack jurisdiction to adjudicate the appeal.