**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0522n.06

**No. 18-5256**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| WILLIAM SMALLWOOD, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Oct 19, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| COCKE COUNTY GOVERNMENT, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| Defendant-Appellee. | ) | DISTRICT OF TENNESSEE |
| | ) | |

BEFORE: CLAY and GRIFFIN, Circuit Judges; ZOUHARY, District Judge.[*]

PER CURIAM.

This case arises from Plaintiff-Appellant William Smallwood's termination in 2017 from his job as Fire Chief of Cocke County, Tennessee. Smallwood brought several claims against Defendant-Appellee Cocke County Government, including claims that his termination violated his due process rights, First Amendment rights, and Tennessee statutory rights protecting him against retaliatory dismissals. The district court granted summary judgment for the County on all of Smallwood's claims. Smallwood appeals.

For the reasons below, this Court **AFFIRMS** the district court's entry of summary judgment.

---

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

**BACKGROUND**

Crystal Ottinger became Mayor of Cocke County, Tennessee, in September 2014. Though many county employees had not supported her mayoral candidacy, Ottinger did not terminate any employees upon taking office. Among these employees was William Smallwood, then Fire Chief of the Cocke County Fire Department.

A couple of years into Ottinger's term, tension grew between two county agencies—the Cocke County Emergency Management Agency (EMA) and the Cocke County Fire Department. The two agencies shared office space, with the EMA office sitting directly above the fire hall where the firetrucks were kept. In August 2016, EMA Director Kevin Benton first complained to Ottinger that some firefighters, in particular Captain Clayton Ellison, had been harassing him at work. Benton then reported more harassment in January 2017, saying that firefighters had repeatedly operated a firetruck's siren, blew the horn, and ran the engine for twenty minutes while the truck remained inside the fire hall—sending exhaust fumes into the EMA office. Later that month, Benton complained that Ellison had grabbed his crotch and made sexually suggestive motions towards Benton, while Smallwood stood by and did nothing.

On February 1, 2017, Benton filed a harassment charge with the Equal Employment Opportunity Commission (EEOC) against Cocke County. Ottinger then met with Smallwood, informing him of the EEOC complaint and ordering him not to retaliate against Benton for filing the charge. Smallwood agreed.

But a month later, Benton reported another incident of harassment. On that day, Benton was in his upstairs office when he noticed Ellison had climbed the stairs to use a second-floor bathroom, despite the availability of two bathrooms downstairs. Benton decided to take out the trash to avoid interaction. As Benton was returning to his office, Ellison exited the fire hall. As

the two passed each other, Ellison said, "Get you some." Benton turned around, asked Ellison what he had said, and informed Ellison he was recording him. Ellison grew angry, and Smallwood and another fireman went outside to defuse the situation. Eventually, just Benton and Smallwood were left outside, and Smallwood referenced Benton's EEOC complaint. He asked Benton, "[W]hy did you go down [to the EEOC] and make us look like a bunch of assholes then?" In the exchange that followed, Smallwood referred to Benton's harassment complaints as "bullshit" and told Benton, "[A]nd here you are, out here raising hell, and madder . . . than hell at everybody." Benton reported this conversation to Ottinger.

Ottinger concluded that this conversation was retaliation against Benton for filing the EEOC charge. She met with Smallwood on March 7, 2017, and recorded their conversation. Ottinger gave Smallwood a choice among several remedial options. Smallwood refused to accept any of the options, and Ottinger fired him on the spot. The following day, Ottinger issued a press release announcing Smallwood's termination. The press release recounted Ottinger's February discussion with Smallwood about the EEOC complaint and her warning to him not to retaliate, the later instance of retaliation, Smallwood's refusal to accept any of her remedial options, and her decision to fire him.

Following his termination, Smallwood requested that he either be reinstated as Fire Chief or given a hearing before the Cocke County Civil Service Board (CSB). The CSB, created in 2016 by the county legislature, was intended to limit terminations for certain civil service positions—including the Fire Chief—to for-cause dismissals, and to give those terminated a right to a hearing. But the CSB's validity was called into question at some point before Smallwood's termination. By the time Smallwood requested a hearing, the Cocke County Attorney had written an opinion letter, concluding that the CSB was illegal under Tennessee state law.

After Smallwood did not receive a CSB hearing, he sued the County, bringing four claims: (1) a § 1983 claim under the Fourteenth Amendment that the County deprived him of a property or liberty interest in his future employment as Fire Chief without due process of law; (2) a similar due process claim under the Tennessee Constitution; (3) a § 1983 patronage dismissal claim under the First Amendment; and (4) a state-law retaliatory discharge claim. The district court granted summary judgment on all four claims. This appeal followed.

## DISCUSSION

This Court reviews the grant of a motion for summary judgment *de novo*. *Am. Cas. Co. of Reading, Pennsylvania v. F.D.I.C.*, 39 F.3d 633, 636 (6th Cir. 1994). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Civil Rule 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The district court wrote a persuasive memorandum opinion, describing the lack of genuine dispute of material fact in each of Smallwood's claims. On appeal, Smallwood does not address much of the district court's reasoning and leaves this Court with little reason to see the facts or the law differently. As the district court has already articulated thoroughly the reasons why judgment should be entered for the County, a full written opinion here would be largely duplicative. This Court, instead, addresses key arguments Smallwood raises on appeal.

### Due Process Claims

To establish a procedural due process violation under the Fourteenth Amendment of the United States Constitution, a plaintiff must show "(1) that [he] was deprived of a protected liberty

or property interest, and (2) that such deprivation occurred without the requisite due process of law." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 729 (6th Cir. 2011) (alteration in original) (citation omitted). Thus, for Smallwood to have a viable due process claim, he must show that he had a protectable property or liberty interest.

**Property Interest**

A property interest in continued employment exists where a plaintiff has a "legitimate claim of entitlement" to continued employment. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The district court thoroughly explained why no property interest exists in this case, and Smallwood's appellate brief makes many of the same arguments that were made to the district court. This Court adopts the district court reasoning as to those arguments.

This Court, in particular, adopts the district court reasoning with regard to the legality of the Cocke County CSB. Smallwood argues that the CSB limits the grounds under which the Cocke County Fire Chief can be discharged, but the district court explained how the CSB was formed contrary to law and why its rules have no legal effect. The only argument Smallwood offers on this point is that "state lawmakers have deferred to the local government of Cocke County on the issue." That assertion is incorrect. As the district court found, Tennessee Code Annotated § 5-23-108 explicitly declares a lack of legal authorization for the County to create such a board. That statute says that it shall not "be construed to affect the employment-at-will status of any county employee," and it explicitly withholds authorization "for establishing systems of seniority, tenure, or classified service." Tenn. Code Ann. § 5-23-108. Despite the district court's reliance on this statute in granting summary judgment, Smallwood fails even to mention this statute in his appellate brief. The district court found that this law deprives the CSB of legal authority, and this Court agrees.

Smallwood does make one alternative argument, which the district court did not address. He points to Tennessee Code Annotated § 5-17-103(c), which says, "The county fire chief shall be appointed by the county mayor, subject to confirmation by the county legislative body or other governing body." He argues that, because a mayor's decision to *appoint* a fire chief is subject to confirmation by the county legislature, a mayor's decision to *terminate* a fire chief should follow the same procedure.

In 1981, the Tennessee Attorney General addressed this very question: whether a county executive could unilaterally dismiss a county department head whose appointment had been subject to legislative confirmation. The Attorney General concluded that county executives have the authority to dismiss department heads without the county legislature's confirmation, as long as "the tenure of these offices is not prescribed by statute or the constitution." Tenn. Op. Att'y Gen. No. 81-73 (Tenn. A.G. Feb. 2, 1981), 1981 WL 142735. To reach this conclusion, the Attorney General analogized to the power of the President of the United States and cited the Supreme Court's landmark decision of *Myers v. United States*, 272 U.S. 52 (1926). There, the Court declared, "The power of removal is incident to the power of appointment, not to the power of advising and consenting to appointment." *Id.* at 122. This long-recognized principle has been a foundational part of the relationship between the executive and legislative branches on the federal level, and the Tennessee Attorney General explained that the inter-branch relationship works similarly in Tennessee. Smallwood cites no authority to the contrary. Accordingly, this Court finds that Tennessee Code Annotated § 5-17-103(c) does not affect Ottinger's ability to unilaterally dismiss Smallwood. Thus, Smallwood had no property interest in his continued employment as Fire Chief, and his due process claim under this theory fails.

**Liberty Interest**

Smallwood makes no new arguments on appeal that the district court did not address. The district court discussed the five factors that a plaintiff must show in order to establish that he was deprived of a liberty interest. One of these factors is that the public charges made against him were false.

Smallwood argues that the true reason for his termination was political retaliation, so the press release was false. But even assuming the retaliatory reason as true, no liberty interest is implicated here. Whether a liberty interest is implicated turns on whether the press release contains false accusations. The press release describes a series of events involving workplace harassment, an EEOC complaint, and the interactions and meetings that followed. Smallwood does not deny the incident between Benton and Ellison, nor does he deny his later conversation with Benton. The record contains transcripts documenting conversations between Ottinger and Smallwood about the EEOC complaint as well as Smallwood's interaction with Benton and his meeting with Ottinger. These interactions formed the *publicized* basis, pretense or not, for his termination. Smallwood points to no evidence—nor did he ever allege before the district court—that the press release disseminated false information. Without this evidence, Smallwood cannot show a genuine dispute of material fact that a liberty interest was implicated in his firing.

**Tennessee State Constitution Due Process Claims**

"Any prerequisites necessary to prove a due process violation under the United States Constitution . . . [are] applicable to proving a violation of Article I, Section 8 of the Tennessee Constitution." *Nichols v. Tullahoma Open Door, Inc.*, 640 S.W.2d 13, 16 (Tenn. Ct. App. 1982). Because Smallwood's due process claims under the Fourteenth Amendment of the United States Constitution fail, his claims under the Tennessee Constitution also fail.

**First Amendment Patronage Dismissal Claim**

Smallwood argues that there is a genuine dispute of material fact regarding Ottinger's true motivation for terminating him. He claims he was terminated, at least in part, because he did not support Ottinger's mayoral campaign and because he refused to fire an employee—Ellison—who also did not support her campaign.

The district court adequately addressed this claim, and this Court will not reiterate the full reasoning here. In summary, the court recognized that, although the First Amendment generally prohibits dismissals of public employees based upon political views, public employees in "policymaking positions" *can* be dismissed for political reasons. Public employees in this latter category fall under the so-called "*Elrod-Branti* exception" to the general prohibition of patronage dismissals.[1] To determine whether a fire chief falls into this exception, the district court discussed *Tompos v. City of Taylor*, 644 F. App'x 678 (6th Cir. 2016)—a case the district court called "nearly identical" to this one—involving an alleged patronage dismissal of a fire chief. *Tompos* found that plaintiff fire chief exercised discretionary power over the enforcement of fire-prevention laws and concluded that he, therefore, fell into the *Elrod-Branti* exception and *could* be terminated for political reasons. *Tompos*, 644 F. App'x at 683. Smallwood, in his appellate brief, does not argue why the district court's reasoning was wrong, does not even cite *Tompos*, and does not give this Court any reason to distinguish that case from his. Instead, he reiterates the arguments he made to the district court—arguments the district court correctly rejected.

---

[1] The two United States Supreme Court cases from which this exception is derived are *Elrod v. Burns*, 427 U.S. 347 (1976), and *Branti v. Finkel*, 445 U.S. 507 (1980).

This Court adopts the district court's reasoning as to the patronage dismissal argument. Regardless of whether Smallwood's termination was politically motivated, as Fire Chief, he could be terminated for political reasons.

**State-Law Retaliatory Discharge Claim**

Tennessee's retaliatory discharge statute provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b). Smallwood argues that he was terminated for refusing to participate in an illegal activity—namely, firing Ellison for his political views. He claims that firing Ellison would have been an "illegal activity" because it would have violated a CSB rule, which provides, "No person shall be . . . demoted or dismissed from, any position in the classified service, or in any way favored or discriminated against with respect to employment in the classified service because of his political or religious opinions."

This claim hinges on the legality of the CSB. As discussed above, the CSB lacks authority to enact rules with any legal effect. Smallwood offers no alternative grounds for this claim. Thus, the district court did not err in granting summary judgment on this claim.

CONCLUSION

Smallwood fails to rebut the district court reasoning and fails to identify any genuine issue of material fact for any of his claims. For these reasons, we **AFFIRM**.